IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2013 Term

**FILED**

**February 22, 2013**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 11-1156

CHARLES ELDER,
Defendant Below, Petitioner

v.

ANNABELLE SCOLAPIA, HOME INCARCERATION
OFFICER FOR HARRISON COUNTY
Plaintiff Below, Respondent

Appeal from the Circuit Court of Harrison County
Honorable James A. Matish, Judge
Civil Action No. 10-C-103-3

AFFIRMED

Submitted: January 8, 2013
Filed: February 22, 2013

Steven T. Cook, Esq.                          Patrick Morrisey, Esq.
Stapleton Law Offices                         Attorney General
Huntington, West Virginia                     Laura Young, Esq.
Attorney for Petitioner                       Assistant Attorney General
                                              Charleston, West Virginia
                                              Attorneys for Respondent

JUSTICE LOUGHRY delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1. "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syl. Pt. 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

2. An offender who has been sentenced pursuant to the Home Incarceration Act, West Virginia Code §§ 62-11B-1 to -13 (2010), and is accordingly subject to substantial restrictions on his or her liberty by virtue of the terms and conditions imposed by a home incarceration order, which include arrest and resentencing for a violation of those terms and conditions, is "incarcerated under sentence of imprisonment" for purposes of seeking post-conviction habeas corpus relief under West Virginia Code § 53-4A-1 (2008).

3. "In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Syl. Pt. 5, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995).

LOUGHRY, Justice:

Petitioner Charles R. Elder appeals from the denial of his petition for a writ of habeas corpus as set forth in two orders separately entered by the Circuit Court of Harrison County on July 11, 2011. Mr. Elder, who is serving a criminal sentence by the alternate means of home incarceration,[1] sought relief in habeas corpus solely for sentencing and post-sentencing matters. Following an omnibus hearing, the trial court denied the petition with regard to the ground of ineffective assistance of counsel but modified the terms of Petitioner's home incarceration to afford Mr. Elder one hour per day of recreational time outside the physical confines of his house but within the parameters of his yard; to authorize the least restrictive type of home monitoring device; and to permit travel outside this state for necessary medical appointments. As part of its ruling, the trial court denied Petitioner's request to attend services at a specified church that would have required an hour and a half of driving time round trip. Through this appeal, Mr. Elder seeks immediate release from any further incarceration in light of his continuing deterioration due to Parkinson's disease. Upon our careful review of the record in this matter, we find no basis for habeas corpus relief or for further modification of the terms of Petitioner's sentencing. Accordingly, we affirm.

---

[1]With amendments that were adopted in 1994, the act previously known as the Home Confinement Act was renamed the Home Incarceration Act. *See* W.Va. Code § 62-11B-3 (1994).

## I. Factual and Procedural Background

On December 8, 2008, Petitioner entered a plea of guilt to one count of sexual abuse by a person in a position of trust and one count of third degree sexual assault.[2] Following the completion of a presentence investigation, a psychological evaluation, and a sex offender evaluation, the sentencing hearing was scheduled for February 12, 2009. After receiving testimony from two witnesses called on Petitioner's behalf as well as the victim's mother, the trial court sentenced Mr. Elder to ten to twenty years for his plea of guilt to sexual abuse by a person in a position of trust and one to five years for his plea of guilt to third degree sexual assault. Over the State's objection, the trial court ordered that these sentences were to run concurrently[3] and, due to Petitioner's health concerns, permitted Mr. Elder to serve his sentences by the alternate means of electronically-monitored home incarceration.[4]

---

[2]During the investigation of these charges, the State obtained information that Petitioner had committed numerous sexual assaults against his two stepdaughters while they were minors. Reluctant to relive those incidents through trial testimony, the stepdaughters preferred that this matter be resolved by plea agreement provided that Mr. Elder was likely to receive a significant sentence. According to the State's Response to the Petition for Post Conviction Writ of Habeas Corpus, the terms of the plea agreement offered in this case expressly included the State's decision not to prosecute Mr. Elder for the sexual conduct perpetrated against his two stepdaughters between 1960-1978.

[3]The State had requested that Petitioner be sentenced to consecutive terms.

[4]In addition to the standard terms of home incarceration, the following conditions were imposed upon Petitioner: (1) That he not possess pornographic materials in his home; (2) That he not take erectile dysfunction medicine; (3) That he attend Matt Deluca's sex offender treatment for three years; and (4) That he comply with the terms and conditions of

(continued...)

Petitioner filed a post-conviction writ of habeas corpus on March 18, 2010. Through the omnibus hearing held on August 25 and December 2, 2010,[5] Petitioner raised a variety of concerns, the bulk of which centered on his desire to modify the terms of his home incarceration.[6] Specific items for which he sought the trial court's approval included walking the dog; getting the newspaper; gardening; travel to Texas to visit friends; thrice weekly church attendance; and replacement of his ankle monitoring device. Also raised as a ground for the petition was ineffective assistance of counsel. This ground was expressly limited to counsel's failure to initiate an appeal with regard to the sentencing imposed by the trial court.

In the first of the two orders entered on July 11, 2011, the trial court addressed Petitioner's ineffective assistance of counsel claim. The trial court determined that this claim was based on two allegations: the failure of Mr. Elder's former counsel, Thomas G. Dyer, to file an appeal following the sentencing order and his failure to file a motion for

---

[4](...continued)
supervised release during the period of his home confinement.

[5]The trial court decided to continue the hearing as two witnesses whose testimony was relevant to the issue of ineffective assistance of counsel–Thomas G. Dyer and D. Conrad Gall–had not been subpoenaed to appear at the hearing.

[6]Petitioner's counsel stated at the December 2, 2010, omnibus hearing that a habeas petition was filed based on Mr. Elder's deteriorating medical condition because it was too late to file a motion for reconsideration of sentencing under Rule 35 of the West Virginia Rules of Criminal Procedure.

reconsideration of sentencing in a timely manner. The trial court applied the test we adopted in *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995), and concluded that Mr. Dyer's representation of Mr. Elder was not deficient under an objective standard of reasonableness. In both instances, the trial court found that Mr. Dyer took the necessary actions that a reasonable criminal defense attorney would have taken in a similar situation. As an additional matter, the trial court found the record devoid of evidence that Petitioner had instructed Mr. Dyer to file an appeal on his behalf or to file a motion for reconsideration of sentence. After concluding that Petitioner had failed to meet his burden of proof under *Miller*, the trial court denied Mr. Elder's request for habeas corpus relief on the ground of ineffective assistance of counsel.

In the second order entered on July 11, 2011, the trial court addressed the remaining grounds asserted by Petitioner in either his habeas petition or during the course of the omnibus hearings.[7] Based on the evidence adduced at the hearings and information obtained from the Department of Corrections with regard to the recreational time allotted to inmates on a daily basis,[8] the trial court ordered that Petitioner should be afforded one hour

---

[7]Petitioner did not assert a denial of his right to exercise his religious freedom as part of his habeas petition; the issue was raised during the December 2, 2010, omnibus hearing.

[8]At the close of the omnibus hearing held on August 25, 2010, the trial court directed the Home Incarceration Supervisor, Respondent Scolapia, to request the rules, regulations, and all other pertinent information relevant to the outside therapy/recreation (yard time) provided to inmates by the Department of Corrections.

of recreation time outside his home per day while remaining within the physical confines of his yard. Responding to Mr. Elder's concerns about the physical effects of the ankle monitor, the trial court directed that the least restrictive home monitoring device be utilized.[9] The trial court also ordered that Petitioner be permitted to leave the state for properly scheduled and necessary medical appointments related to his health condition of Parkinson's disease.[10] With regard to Petitioner's request that he be permitted to attend services at the Weston Church of God three times a week,[11] the trial court first considered the fact that Mr. Elder had not been regularly attending church immediately before being placed on home incarceration. Concerned with the need to protect any children who would be attending those church services, the trial court weighed this concern with Petitioner's request to exercise his freedom of religion in this particular manner and decided that Mr. Elder's request to attend those specific church services should be denied. Based on evidence that both the Weston Church of God's pastor and its congregants had been visiting with Mr. Elder in his home and engaging in Bible study during those visits, the trial court ruled that Petitioner's religious rights were not being violated.

[9]As a result of this ruling, Petitioner is currently using a wrist monitoring device.

[10]Petitioner's counsel indicated during the omnibus hearing that a treating physician, Dr. Sidney Jackson, wanted Mr. Elder to see a neurologist in Pittsburgh, Pennsylvania. Upon questioning from the trial court, however, it was revealed that no appointment had been scheduled for any out-of-state medical treatment and, further, that no request had been made with the home incarceration office to allow for such travel.

[11]The services that Petitioner sought to attend at the Weston Church of God are held on Sunday mornings, Sunday evenings, and Wednesday evenings.

Through this appeal, Petitioner seeks a reversal of the trial court's rulings insofar as the trial court did not fully release him from his home incarceration and/or place him on probation.

## II.  Standard of Review

As we explained in syllabus point one of *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006)**,** our review is governed by the following standard:

> In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review.  We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.

With this standard in mind, we proceed to determine whether the circuit court committed error in denying habeas corpus relief to Petitioner.[12]

## III.  Discussion

### A.  Applicability of Habeas Corpus

As an initial matter, we wish to address a concern first articulated by James Armstrong, the assistant prosecutor, in responding to Petitioner's filing of the subject habeas

---

[12]The relief that the trial court awarded Petitioner in terms of altering the type of his electronic-monitoring device; providing for daily exercise time outside of his home; and authorizing out-of-state medical treatment was a modification of the terms of Mr. Elder's home incarceration rather than a remedy warranted under principles of habeas corpus.

petition. Given that the post-conviction habeas statute provides relief to someone who is "incarcerated under sentence of imprisonment," Mr. Armstrong questioned whether an individual who is not incarcerated in a prison or jail cell has standing to assert a post-conviction habeas claim. *See* W.Va. Code § 53-4A-1. Echoing this argument, Respondent Scolapia, the Home Incarceration Supervisor for Harrison County, reasons that individuals on home confinement are not entitled to seek relief in habeas corpus based on our previous recognition that the definition of incarceration entails "confinement in a jail or penitentiary." *See State ex rel. Goff v. Merrifield*, 191 W.Va. 473, 477, 446 S.E.2d 695, 699 (1994). Not only does Respondent fail to attribute Black's Law Dictionary as the proper source of that definition, but she overlooks the reason for the lexical reference in *Merrifield*. This Court's reference to the common usage of the term "incarceration" was prompted by a need to determine whether confinement within the county jail as a condition of probation qualified as a "sentence" for purposes of applying statutory good time credit. *See Merrifield*, 191 W.Va. at 476-78, 446 S.E.2d at 698-700 (discussing application of W.Va. Code § 7-8-11). As we made clear in *State v. Lewis*, 195 W.Va. 282, 465 S.E.2d 384 (1995): The statute being interpreted governs whether home incarceration is encompassed within its reach. *Id.* at 288, 465 S.E.2d at 390. Applying that concept in *Lewis*, this Court decided that for purposes of the probation statute "home incarceration is not considered the same as actual confinement in a county jail." 195 W.Va. at 288, 465 S.E.2d at 390 (interpreting W.Va. Code § 62-12-9(b)). Critically, this Court's interpretation of "incarceration" or "home

7

incarceration," as those terms relate to the good time credit statute and the probation statute, have no bearing on the meaning of such terms for purposes of the habeas statute under review. *See* W.Va. Code § 53-4A-1.

Until today, this Court has never squarely addressed the issue of whether home incarceration constitutes the qualifying level of incarceration for purposes of seeking post-conviction relief in habeas corpus. *See id.* Federal law leaves no doubt that the remedy of habeas corpus is available to individuals on home incarceration. Beginning with its seminal decision in *Jones v. Cunningham*, 371 U.S. 236 (1963), the United States Supreme Court has broadly interpreted the "in custody" triggering language of the federal habeas statute, 28 U.S.C. § 2241, to extend to any situation where there are significant restraints on an individual's liberty. 371 U.S. at 242-43. The high court ruled in *Jones* that a parolee came within the ambit of the "in custody" requirement based on the numerous limitations placed upon his personal freedom, including the ongoing possibility that he could be rearrested at any time upon a violation of a term or condition of his parole. *Id.; see Hatch v. Lapin*, 660 F.Supp.2d 104, 108 (D. Mass. 2009) (holding that revocation of home confinement was proper subject of federal habeas corpus laws); *Davis v. Nassau County*, 524 F.Supp.2d 182, 187 (E.D. N.Y. 2007) (stating that "[p]hysical confinement is not necessary to satisfy the 'in custody' requirement" of federal habeas corpus statutes); *U.S. ex rel. Wojtycha v. Hopkins*, 517 F.2d 420, 423-24 (3d Cir. 1975) (extending rationale of *Jones* to individuals on

8

probation); *see generally* Syl. Pt. 4, *Click v. Click*, 98 W.Va. 419, 127 S.E. 194 (1925) (recognizing origin of writ of habeas corpus as challenge to improper restraint of liberty or custody).

Under the controlling habeas statute, post-conviction relief may be sought by "[a]ny person convicted of a crime and incarcerated under sentence of imprisonment." W.Va. Code § 53-4A-1. While Respondent argues that Mr. Elder's confinement in his own home pursuant to the Home Incarceration Act disqualifies him from seeking post-conviction habeas relief, we disagree. *See* W.Va. Code §§ 62-11B-1 to -13 (2010). We are not persuaded by Respondent's contention that the use of an alternate means of sentencing such as home incarceration prevents an individual from asserting constitutional challenges[13] to his or her sentence. What is critical to the assertion of a post-conviction challenge to a criminal sentence is whether that individual is "incarcerated" within the meaning of West Virginia Code § 53-4A-1.

In the same manner that the United State Supreme Court analyzed the trigger for habeas corpus relief under federal law, we focus on whether there are substantial restraints on an individual's freedom to assist us in identifying the requisite basis for seeking

---

[13]It is axiomatic that habeas corpus proceedings are limited to matters of constitutional significance. *See Edwards v. Leverette*, 163 W.Va. 571, 576, 258 S.E.2d 436, 439 (1979) (distinguishing nature of review in direct appeals as compared to habeas corpus proceedings).

9

habeas corpus relief under state law. *See Jones,* 371 U.S. at 242. The fact that Petitioner is serving his sentence in an alternate fashion subject to the terms of the Home Incarceration Act does not mean that he has the freedom to come and go as he pleases; his daily activities are subject to both the supervision and control of the Home Incarceration Office. *See State v. Long*, 192 W.Va. 109, 111, 450 S.E.2d 806, 808 (1994) (recognizing that "entire statutory scheme [of Home Incarceration Act] is designed to place substantial restrictions on the offender"). The bulk of Petitioner's complaints evidence his frustration with the significant restrictions imposed on his daily life under the terms of his home incarceration.[14] Mr. Elder's ongoing attempts to reduce the severity of those restrictions further manifest the appreciable nature of those restrictions. As the assistant prosecutor correctly observed in responding to Mr. Elder's habeas petition, "[h]ome confinement is not designed to be fun or enjoyable, nor is it supposed to afford a confinee with the same liberties he or she enjoyed prior to being placed on home confinement."

Just as the United State Supreme Court equated the "in custody" trigger of the federal habeas corpus statutes with the imposition of significant restraints on an individual's

---

[14]Petitioner's former counsel, Thomas G. Dyer, testified at the omnibus hearing that Mr. Elder called him once a week for several weeks at the beginning of the period of home incarceration and indicated that he "wasn't going to be able to survive these strict terms and conditions of home confinement." Mr. Dyer testified that Matt DeLuca, the sex offender counselor, called on Petitioner's behalf and similarly related that Mr. Elder was not "tolerating the rather strict terms of this home confinement too well."

10

"liberty to do those things which . . . free men are entitled to do," we find the existence of significant restraints on Petitioner's freedoms to be indicative of whether he is "incarcerated" for purposes of post-conviction habeas review. *Jones*, 371 U.S. at 243; W.Va. Code § 53-4A-1. As the record in this case makes clear, Petitioner does not enjoy the liberty to freely wander the physical confines of his yard, let alone his community, this state, or this country. Virtually every decision that he makes with regard to exiting his house is subject to the terms of the home incarceration order. And, as is the case with any offender,[15] a violation of the terms of the controlling incarceration order can result in the revocation of that alternate means of sentencing and the imposition of a traditional sentence in the penitentiary or jail. *See* W.Va. Code § 62-11B-5(2) (requiring that home incarceration order contain "[n]otice to the offender of the penalties which may be imposed if the circuit court or magistrate subsequently finds the offender to have violated the terms and conditions in the order of home incarceration"); *see also Horton v. Dobbs,* 2011 WL 3606369 at *27 (N.D. W.Va. 2011) (discussing authority of home incarceration supervisor to arrest "home incarceration participant when reasonable cause exists to believe that such participant has violated the conditions of his or her home incarceration"). Finally, the decision to retitle the Home

---

[15]Under the Home Incarceration Act, an "offender" is defined as "any adult convicted of a crime punishable by imprisonment or detention in a county jail or state penitentiary; or a juvenile convicted of a delinquent act that would be a crime punishable by imprisonment or incarceration in the state penitentiary or county jail, if committed by an adult." W.Va. Code § 62-11B-3(3).

11

Confinement Act as the Home Incarceration Act,[16] suggests a legislative recognition that individuals who are serving their criminal sentences within the confines of their respective homes are to be viewed as incarcerated rather than merely confined. *See* W.Va. Code § 62-11B-3.

Based on the foregoing analysis, we hold that an offender who has been sentenced pursuant to the Home Incarceration Act and is accordingly subject to substantial restrictions on his or her liberty by virtue of the terms and conditions imposed by a home incarceration order, which include arrest and resentencing for a violation of those terms and conditions, is "incarcerated under sentence of imprisonment" for purposes of seeking post-conviction habeas corpus relief under West Virginia Code § 53-4A-1. In view of the clear and undisputed restrictions of a substantial nature that are currently imposed on Petitioner pursuant to the governing home incarceration order combined with the ongoing possibility that his alternative sentence could be revoked at any time, we have no difficulty in viewing him as "incarcerated under sentence of imprisonment." *Id.* As a result, Mr. Elder is entitled to seek post-conviction habeas relief pursuant to West Virginia Code § 53-4A-1 for his claims that are grounded in constitutional law.[17]

---

[16]*See supra* note 1.

[17]*See supra* note 13.

12

## B. Ineffective Assistance of Counsel

In addressing Petitioner's allegation of ineffective assistance of counsel, the trial court applied the test we adopted in syllabus point five of *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995):

> In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

After distilling Mr. Elder's representational concern into two complaints–failure to file an appeal and failure to file a motion for reconsideration of sentence–the trial court proceeded to apply the test we adopted in *Miller.*

In considering Petitioner's complaint that his former counsel, Thomas G. Dyer, failed to file an appeal on his behalf, the trial court reviewed the testimony of Mr. Dyer at the omnibus hearing in conjunction with the record in this matter. While Mr. Dyer testified that he discussed the right to appeal the sentence with his client,[18] he further indicated to Mr. Elder that such an appeal "would be completely meritless." In clarification of this advice, Mr. Dyer related that following the sentencing hearing he informed Petitioner that he was

---

[18]Petitioner acknowledges that Mr. Dyer's "performance was exemplary up and until the sentencing phase of the underlying proceedings."

13

"one of the luckiest men I've ever represented in twenty-three years"[19] and indicated additionally that he did not see any basis for appeal.

Upon its review of the record, the trial court concluded that there was no evidence that Petitioner instructed Mr. Dyer to file an appeal on his behalf. Mr. Dyer's testimony that he never told Mr. Elder that he would file an appeal was viewed by the trial court as confirmation of Petitioner's failure to direct Mr. Dyer to file an appeal. According to the trial court, the "record demonstrates that, during the time that Mr. Dyer was the Petitioner's counsel, he took the necessary actions that a reasonable criminal defense attorney would take in a similar situation." Based on this finding, the trial court opined that Mr. Elder had failed to meet the requisite first prong of *Miller*: a showing of deficient representation under an objective standard of reasonableness. *See* 194 W.Va. at 6, 459 S.E.2d at 117, syl. pt. 5. Given that Petitioner received what can only be viewed as a lenient sentence in view of his admission to committing undisputedly offensive criminal conduct,[20] we seriously doubt that a meritorious appeal could have been taken from the trial court's sentencing decision. *See id.*

---

[19]In further explanation, Mr. Dyer opined that Mr. Elder "had pled guilty to a fabulous deal, [and] received a sentence that shocked everybody involved in the case in this courtroom [as it] was much more lenient than anybody anticipated."

[20]The trial court commented during the omnibus hearing that its decision to impose alternative sentencing was impelled by Mr. Elder's serious health condition and his prior military service to this country.

Concerning the alleged failure to timely file a motion for reconsideration of sentencing, the trial court determined that the actual filing Mr. Dyer had been directed to prepare on Petitioner's behalf was not a motion to reconsider sentencing but a motion to modify the terms of his home incarceration.[21] As the record confirms, Mr. Dyer filed a motion to modify the terms of Petitioner's home incarceration on June 23, 2009. By order entered on August 19, 2009, the trial court denied this motion, stating that the motion lacked supporting medical information necessary to substantiate a legitimate basis for the requested modification.[22]

Upon its review of the record, the trial court concluded that Petitioner had not introduced any evidence in support of his claim that Mr. Dyer was instructed to file a motion for reconsideration of sentence on his behalf. Returning to the first prong of *Miller*, the trial court ruled that Petitioner had failed to demonstrate that Mr. Dyer's actions fell short of what a reasonable criminal defense attorney would have done in a similar situation. Having carefully and fully reviewed the record in this matter, we find no basis for disagreeing with

---

[21]While the trial court refers to the terms of home confinement in its ruling, we employ the proper terminology–home incarceration–for the purpose of educating both the bar and the judiciary as to the retitling of the subject legislation. *See supra* note 1.

[22]As the trial court explained, Mr. Elder's medical condition had been specifically considered in making the decision to place Petitioner on home incarceration. To the extent Petitioner was seeking a reconsideration of sentence, the trial court ruled that such a motion was untimely as the 120-day appeal period had expired on June 13, 2009.

the trial court's decision that both of Petitioner's ineffective assistance of counsel claims do not survive scrutiny under *Miller*. *See* 194 W.Va. at 6, 459 S.E.2d at 117, syl. pt. 5.

### C. Religious Freedom

In an arguable attempt to create a constitutional claim for purposes of seeking habeas relief,[23] Petitioner asserts that he is being denied the right to exercise his religious freedom.[24] *See* W.Va. Const. art. III, § 15. As related above, the trial court fully considered Mr. Elder's request to attend thrice weekly church services at the Weston Church of God.[25] In light of the fact that Petitioner was not attending any church services before he was placed on home incarceration combined with the correlative need to protect any children in attendance at those services from a convicted pedophile,[26] the trial court denied Mr. Elder's request to attend religious services at the Weston Church of God.

Rather than looking to our state or federal constitutions as the source of the alleged infringement of his religious freedoms, Petitioner relies instead upon a provision of

---

[23]*See supra* note 13.

[24]This claim was raised on the second day of the omnibus hearing. *See supra* note 7.

[25]Through the testimony of Pastor Randall Lane Hughes, it was established that Petitioner was seeking to attend services, which last for approximately two hours, on Sunday mornings, Sunday evenings, and Wednesday evenings.

[26]Pastor Hughes testified that minor children would be on the church van/bus that Mr. Elder would be using when a congregant/neighbor was unable to drive him to church.

16

the Home Incarceration Act. Specifically, Mr. Elder cites to the statutory provision in which the Legislature has broadly addressed the contents of the order required to place an offender on home incarceration. *See* W.Va. Code § 62-11B-5. As part of the delineated but expressly non-inclusive list of matters to be addressed in a home incarceration order,[27] the Legislature included the foundational requirement that an offender be confined to his or her home at all times subject to certain delineated exceptions. One of the statutorily-recognized exceptions to continuous confinement is "[a]ttending a regularly scheduled religious service at a place of worship." W.Va. Code § 62-11B-5(1)(E).[28] Because worship service attendance is expressly identified within the legislatively-approved exceptions to confinement within the offender's home, Mr. Elder argues that he was wrongly denied the right to attend services at his desired place of worship.

Looking to the introductory language of West Virginia Code § 62-11B-5 which provides the elements that a home incarceration order "is to include," Mr. Elder argues that

[27]The Legislature made clear that additional matters could be included in the home incarceration order. *See* W.Va. Code § 62-11B-5(1) (providing that "order for home incarceration . . . is to include but not be limited to, the following").

[28]The other exceptions specifically contemplated by the Legislature include matters of employment; medical, mental health and counseling; education; community service or work release; and a catchall category of non-specified but specifically-approved activities. *See* W.Va. Code § 62-11B-5(1)(A)-(G).

he has a statutorily-mandated right to attend religious services.[29]  In making this argument, Petitioner misreads the legislative use of the introductory language and further fails to consider that the exceptions to the requirement that an offender be continuously within the confines of his or her home are clearly subject to court approval.

In specifying nine items that are required to be included in each and every home incarceration order,[30] the Legislature provided the critical elements to be contained in such orders.  The first of these requisites concerns the core directive that an offender must be confined to his or her home at all times unless a designated exception is applicable.  *See* W.Va. Code § 62-11B-5(1)(A)-(G).  Because church attendance is a recognized exception to the ongoing requirement of confinement, Petitioner contends that every home incarceration order must necessarily permit an offender to attend religious services.  We find this argument unavailing for several reasons.

---

[29] With amendments enacted in 2001, the statutory language that formerly directed what a home incarceration order "shall include" is now phrased in terms of providing what the order "is to include."  *Cf.* W.Va. Code §§ 62-11B-5 (1994) to 62-11B-5 (2001); *see State v. McGuire*, 207 W.Va. 459, 462 n.2, 533 S.E.2d 685, 688 n.2 (2000) (referring to requirements of W.Va. Code § 62-11B-5 (1997) as "mandatory").  While the statutory amendment is worth noting, our decision does not turn on whether or not the introductory language is framed in mandatory language.

[30] There are actually eight specific requirements as the ninth item recognizes a general requirement that "the offender abide by other conditions set by the circuit court or by the magistrate."  W.Va. Code § 62-11B-5(9).

In suggesting that the Legislature has mandated that every home incarceration order must authorize participation in the areas covered by the exceptions to confinement, Petitioner overlooks an implied need to determine whether those exceptions apply to the particular offender. *See id.* For instance, because Mr. Elder is retired there would be no need to expressly provide as a term and condition of his home incarceration that he may leave his home for employment or employment seeking purposes. Similarly, it stands to reason that someone like Petitioner who is not attending church at the time of his sentencing is unlikely to require an approved allotment of time to attend worship services as part of his home incarceration order.[31] Just because the Legislature anticipated the need to permit an offender to leave his or her home for certain limited purposes during the course of home incarceration, this does not mean that the Legislature sanctioned the automatic right of every offender to participate in each of the excepted activities. *See* W.Va. Code § 62-11B-5(1)(A)-(G). Only when those specified and excepted activities are authorized by the terms and conditions of the home incarceration order or after the trial court has indicated its approval of such activity does an offender have permission to leave his or her home to engage in an activity covered by the exceptions to West Virginia Code § 62-11B-5(1).

---

[31]We are not indicating that an offender who is not initially permitted to attend worship services under the terms of his or her home incarceration order could never obtain the trial court's approval to attend such services. This is a matter subject to the trial court's discretion and controlled by the facts of a given case.

When the issue of attending worship services at the Weston Church of God was raised below, the trial court carefully considered Petitioner's right to exercise his religious freedom against the state's *parens patriae* duty to protect the children who would either be on the church bus or van or inside the sanctuary during worship services. Upon a balancing of Petitioner's request to attend religious services against the specific factors present in this case, the trial court correctly recognized the paramount need to protect the children from the possibility of harm. The trial court also considered the fact that both Pastor Hughes and other church members had been regularly visiting Petitioner and apparently engaging in Bible study with him in his home. Because Mr. Elder was free to continue to meet and have fellowship with the Weston Church of God members in his home, the trial court concluded that his right to exercise his religion freedom was not being violated.[32] We agree.

Upon our review of the provisions of the Home Incarceration Act, we are convinced that the trial court properly considered Petitioner's request to attend worship services and applied the appropriate factors in reaching its decision. As discussed above, an offender does not have an automatic right to attend religious services. That statutorily-recognized exception, like the other exceptions set forth in West Virginia Code § 62-11B-

---

[32]During the oral argument of this case, there was a lengthy discussion of how an individual can exercise his or her freedom of religion within the confines of his or her home. Examples discussed included listening to worship services aired on the radio and viewing any of the many church services that are regularly aired on television.

20

5(1)(A)-(G), is subject to the trial court's discretion. Having carefully reviewed the record in this case, we find no basis for concluding that the trial court erred in denying Petitioner's request to attend worship services at a specified church in view of the competing concerns necessarily injected into the decision by virtue of Petitioner's status as a sexual offender. Mr. Elder is free to exercise his religious freedom in other ways.

## IV. Conclusion

Based on the foregoing, we do not find that the trial court committed error in denying Petitioner's request for a writ of habeas corpus.[33] Accordingly, the decision of the Circuit Court of Harrison County is affirmed.

Affirmed.

---

[33]With regard to Petitioner's plea that he be immediately released from his home incarceration and placed on probation due to his deteriorating health, we observe that this concern is not the proper subject of a habeas complaint. *See supra* note 13.