**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**STATE OF WEST VIRGINIA EX REL.**
**A.D., M.D., and D.D.,**
**Petitioners**

**FILED**

**June 21, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)** No. 18-0489 (Clay County No. 16-JD-9)

**THE HONORABLE JACK ALSOP, JUDGE**
**OF THE FOURTEENTH JUDICIAL CIRCUIT,**
**Respondent**

**MEMORANDUM DECISION**

The Petitioners seek a writ of prohibition to prevent further enforcement of a final juvenile dispositional order of the Circuit Court of Clay County.[1]  That order required the juvenile Petitioner, A.D.,[2] to wear a GPS ankle monitoring bracelet while on home confinement until he reached the age of eighteen.[3]  A.D was twelve years old when these conditions were imposed.  The Respondent, through counsel, filed a summary response brief in support of the circuit court's decision.[4]

This Court has considered the parties' briefs, the appendix submitted, and the parties' oral arguments.  Upon consideration of the standard of review, the Court finds that the circuit court's dispositional order is clearly erroneous as a matter of law.  Accordingly, we prohibit enforcement of the circuit court's dispositional order and remand this case for entry of an order releasing A.D. to the custody of his mother without any restrictions or

---

[1]The Petitioners are represented in this proceeding by Gretchen O. Lewis, who undertook this matter pro bono.

[2]Consistent with our long-standing practice in cases involving children, we use initials where necessary to protect the identities of those involved in this case.  *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015).

[3]The other Petitioners in this matter are A.D.'s mother and step-father.

[4]The Respondent was represented by James E. Samples, Prosecuting Attorney of Clay County, and Daniel B. Dotson, III, Assistant Prosecuting Attorney.

1

conditions.   Insofar as this case does not present a new or significant issue of law, and for the reasons set forth herein, we find this case satisfies the "limited circumstances" requirements of Rule 21(d) of the West Virginia Rules of Appellate Procedure and is proper for disposition as a memorandum decision.

The limited record in this case shows that on October 18, 2016, A.D. carried a small amount of marijuana into Clay County Middle School, where he was enrolled in the seventh grade.   It appears that the marijuana was given to A.D. several days earlier by his adult half-brother, with instructions to deliver it to another adult half-brother.   For reasons that are not clear, the delivery to his half-brother did not occur, and A.D. kept the marijuana in his school notebook.   While at school with the marijuana on October 18, A.D. engaged in a conversation with another student who had indicated that he had smoked marijuana once during summer camp and would like some more.   A.D. informed the student that he had marijuana and would sell it to him.[5]   This conversation was overheard by another student who reported the matter to a teacher.   A.D. was later taken into custody at school by the county sheriff's office and taken to a magistrate.

On December 2, 2016, the State filed a petition requesting that A.D. be adjudicated a juvenile delinquent.   A.D. was appointed counsel several days later.[6]   On May 15, 2017, an adjudication by admission hearing was held before the circuit court.   During that hearing, A.D. pled guilty to possession of marijuana with intent to deliver.   A subsequent dispositional hearing was held on June 22, 2017.   At the conclusion of that proceeding, the circuit court entered a dispositional order on August 7, 2017.

The dispositional order placed A.D. on probation and home confinement until his eighteenth birthday.   Some of the conditions imposed on A.D. included the following: (1) he had to wear a GPS ankle monitoring bracelet; (2) he had to submit to random alcohol and drug testing; (3) he could not leave the State without permission from the probation officer; (4) he could not go beyond 100 feet of his home; and (5) he was allowed to leave his home only for work, medical care, education, church services, or community services. During the months that followed entry of the dispositional order, the circuit court denied a request to allow A.D. to participate in a school football program, and a request to allow him to attend a family celebration of the 71st wedding anniversary of his great-grandparents.

On November 20, 2017, A.D. was admitted to Highland Hospital for psychiatric treatment.   A.D. was admitted to the hospital because of suicidal acts that included cutting

---

[5]No sale actually took place.

[6]The attorney representing A.D. in the proceeding before this Court did not represent A.D. in the juvenile proceedings in circuit court.

2

himself and an attempt to hang himself. A.D. was discharged from the hospital on November 27, 2017, with a diagnosis of major depressive disorder.[7]

When counsel in this proceeding learned of A.D.'s circumstances, she filed this petition for a writ of prohibition seeking the immediate release of A.D. Our law is well established that,

> [i]n determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).[8] The State summarily argues that the Petitioners cannot satisfy any of the *Hoover* factors. We

---

[7]The hospital referred A.D. to out-patient therapy.

[8]The State has not made a specific procedural challenge to the use of a petition for a writ of prohibition in this matter. The State has argued only that the facts of the case do not warrant prohibition relief. We make this observation because, ordinarily, a petition for habeas corpus relief would be the appropriate remedy when home confinement is challenged. *See* Syl. pt. 2, *Elder v. Scolapia*, 230 W. Va. 422, 738 S.E.2d 924 (2013) ("An offender who has been sentenced pursuant to the Home Incarceration Act, West Virginia Code §§ 62-11B-1 to-13 (2010), and is accordingly subject to substantial restrictions on his or her liberty by virtue of the terms and conditions imposed by a home incarceration order, which include arrest and resentencing for a violation of those terms and conditions, is 'incarcerated under sentence of imprisonment' for purposes of seeking post-conviction habeas corpus relief under West Virginia Code § 53-4A-1 (2008)."). Because of the State's waiver of this issue, and the extremely unique facts of this case, we find that the request for prohibition relief is properly before this Court.

disagree.

We find that, under the facts of this case, sentencing a twelve-year-old child to home confinement until he reaches the age of eighteen, requiring him to wear a GPS ankle monitoring bracelet, submitting him to random drug and alcohol tests, and prohibiting him from going beyond 100 feet of his home "is clearly erroneous as a matter of law." The bedrock of our juvenile laws is rehabilitation, not punishment. *See State v. McDonald*, 173 W. Va. 263, 267, 314 S.E.2d 854, 858 (1984) ("We have long recognized that the purpose of our juvenile law is to promote the rehabilitation of troubled children, rather than to punish them."). West Virginia Code § 49-4-714(b) (2015) provides unequivocally and in mandatory language that "[t]he court shall make all reasonable efforts to place the juvenile in the least restrictive alternative appropriate to the needs of the juvenile and the community." In interpreting this statute, we have held as follows:

> In considering the least restrictive dispositional alternative for sentencing a juvenile, a juvenile court must consider the reasonable prospects for rehabilitation of the child as they appear at the time of the dispositional hearing, with due weight given to any improvement in the child's behavior between the time the offense was committed and the time sentence is passed.

Syl. pt. 3, *State ex rel. S J C. v. Fox*, 165 W. Va. 314, 268 S.E.2d 56 (1980).

There is nothing in the record to support the conclusion that the circuit court followed its mandatory duty to consider the least restrictive alternative for sentencing A.D. The dispositional order set out only one finding to support the draconian punishment imposed on A.D. That finding merely stated that A.D. "has failed to understand the seriousness of this act[.]" The single finding of fact set out in the circuit court's dispositional order is inconsistent with the requirements of Rule 39(a)(1) of the West Virginia Rules of Juvenile Procedure, which states in part:

> The dispositional order by the court shall contain written findings of fact to support the disposition and shall contain the following information:
>
> (A) why public safety and the best interest of the juvenile are served by the disposition ordered;
>
> (B) what alternative dispositions, if any, were recommended to the court and why such recommendations were not ordered.

The placement of A.D. was on probation also not done in compliance with our rules.

Under Rule 39(e) provides that,

> [u]pon a finding that the juvenile is in need of extra-parental supervision: (1) place the juvenile under the supervision of a probation officer of the court while leaving the juvenile in the home; and (2) prescribe a program of treatment, therapy or limitations upon the juvenile's activities under reasonable terms which are within the juvenile's ability to perform, including any appropriate program of community service and restitution.

The dispositional order did not set out any finding that A.D. needed extra-parental supervision. Nor did the order set out any program of treatment or therapy. The order did nothing more than impose unreasonable limitations on A.D.'s freedom.

Further, the circuit court's decision to place A.D. on home confinement was done without any justification. Our law is longstanding and clear in holding that,

> [b]efore ordering the incarceration [which includes home confinement] of a child adjudged delinquent, the juvenile court is required to set forth upon the record the facts which lead to the conclusion that no less restrictive alternative is appropriate. The record must affirmatively show that the child's behavioral problem is not the result of social conditions beyond the child's control, but rather of an intentional failure on the part of the child to conform his actions to the law, or that the child will be dangerous if any other disposition is used, or that the child will not cooperate with any rehabilitative program absent physical restraint.

Syl. pt. 2, *State ex rel. R.S. v. Trent*, 169 W. Va. 493, 289 S.E.2d 166 (1982). None of the factors set out under *Trent* were discussed in the circuit court's dispositional order.

Finally, Rule 12(c)(1) of the West Virginia Rules of Juvenile Procedure sets out a presumption of unconditional release of a juvenile delinquent as follows:

> (c) Presumption for Unconditional Release.

> (1) The juvenile shall be released, with or without conditions, unless the court determines there is substantial likelihood that:

> (A) the juvenile's health or welfare would be immediately endangered;

> (B) the juvenile would endanger others;

5

(C) the juvenile would not appear for a court hearing; or

(D) the juvenile would not remain in the care or control of the person into whose lawful custody the juvenile is released.

The dispositional order in this case failed to make a finding on any of Rule 12(c)(1)'s requirements for denying the unconditional release of A.D.[9]

We are gravely concerned about the egregious punishment imposed upon A.D. and the emotional trauma he endured because of that punishment.[10]   "This Court has been unwavering in its attempts to attain resolutions that most thoroughly serve the best interests of the child."   *State ex rel Ridge v. W. Virginia Dep't of Health & Human Res*., 238 W. Va. 268, 274, 793 S.E.2d 918, 924 (2016).   The punishment imposed by the circuit court does not serve the best interests of A.D.   Although A.D. engaged in conduct that would be a crime if committed by an adult, he was only twelve years old.   It was a tragedy to toss him into the gutter as a lost cause when his life had not yet truly begun.   Our legal system must never abandon our children.

---

[9]The record indicates that A.D.'s mother and step-father were never questioned nor allowed to speak at the dispositional hearing.

[10]An affidavit was submitted by a therapist who has been treating A.D. since his release from Highland Hospital.   The therapist wrote the following:

[1] As a child therapist I am very concerned for [A.D.'s] social and emotional health as well as his academic opportunities, or lack thereof, given the sentence of home confinement until age 18.

[2] [A.D.] has consistently maintained that he has no hope of ever being a normal teenager.

[3] I believe that in order for children to be the most productive and contributing members of society, they should be allowed the opportunity to atone for mistakes, but at a reasonable, developmentally appropriate level. Our state needs to provide the best experiences and opportunities for our children in order for us to produce healthy, contributing members to our society.

[4] Preventing this child from participating in socially and emotionally necessary activities in order to meet developmental needs, is a detriment to this child and overall, to the community and ultimately, our state.

A.D. has been on home confinement for almost a year. During that time, he has worn a GPS ankle monitoring bracelet and been confined to within 100 feet of his home. The offense that he committed did not justify this punishment, nor were there any other aggravating factors to support such punishment. Consequently, the circuit court's dispositional order is clearly erroneous as a matter of law. The writ of prohibition prayed for is granted, and the circuit court's dispositional order is prohibited from enforcement. This case is remanded to the circuit court to enter a new dispositional order that releases A.D. to his mother without any conditions.[11] Finally, the Clerk of this Court is directed to issue the mandate in this case forthwith.

Writ granted.

ISSUED:     June 21, 2018

CONCURRED IN BY:
Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Elizabeth D. Walker
Justice Allen H. Loughry II suspended and therefore not participating

---

[11]*See* W.Va. Code § 49-4-701 (f)(1) (2016) ("If a juvenile commits an act which would be a crime if committed by an adult, and the juvenile is adjudicated delinquent for that act, the jurisdiction of the court which adjudged the juvenile delinquent continues until the juvenile becomes twenty-one years of age.").