487 S.E.2d 328

**Bradley Matthew HOOVER, Appellant,**

v.

**Thomas BLANKENSHIP, Sheriff of Nicholas County, and The County Commission of Nicholas County, Appellees.**

No. 23875.

Supreme Court of Appeals of
West Virginia.

Submitted April 30, 1997.

Decided May 29, 1997.

Robert N. Bland, Bland and Bland, Charleston, for Appellant.

W. Christopher Wickham, Shuman, Annand and Poe, Charleston, for Appellee.

STARCHER, Justice:

The appellant Bradley Hoover was arrested and taken into custody by Nicholas County deputy sheriffs. Because Mr. Hoover had been injured before his arrest, Mr. Hoover was taken to a local hospital. At the local hospital the deputies released Mr. Hoover from custody and it was determined that he needed specialized treatment. He was taken to another hospital where he received treatment costing $25,000.

Mr. Hoover filed suit against the sheriff and the county commission, claiming that under *W.Va.Code*, 7–8–2 [1985], they had a duty to pay his medical bills. The Circuit Court of Nicholas County held that there was no such duty. We affirm the circuit court's decision, holding that a sheriff and a county commission have no duty to provide medical care for or pay the medical bills for a person who is not in their custody.

## I.

### Facts and Background

On November 9, 1991, the appellant (plaintiff below) was involved in an altercation at his trailer in Birch River, West Virginia. The appellant apparently was severely beaten by the family of a young woman who believed that the appellant had been improperly involved with the young woman.

The altercation was investigated by officers from the Nicholas County Sheriff's Department who arrived on the scene and arrested[1] the appellant, placing him in handcuffs.

The appellant was transported by ambulance to a local hospital in Summersville, West Virginia. When the appellant arrived at the hospital, the officers removed the handcuffs, and the appellant was examined by hospital personnel.

Because the appellant's injuries were severe, the local hospital decided that the appellant should be immediately transported to a regional hospital in Charleston, West Virginia; this was done. The appellant received extensive medical treatment for his injuries at a cost of about $25,000.

There is no evidence that the appellant had any further contact with the sheriff's officers after leaving the local hospital, and the record is silent as to whether formal criminal charges were ever filed against the appellant.

The appellant sued the appellees (defendants below), the Sheriff of Nicholas County and the Nicholas County Commission, asserting that under *W.Va.Code*, 7–8–2 [1985] the appellees had a duty to pay for the appellant's medical treatment. The Circuit Court of Nicholas County granted summary judgment for the appellees, holding that as a matter of law the appellees had no such duty. In making his ruling, the circuit judge observed that if the appellant had been treated and then taken to jail, the court would have found that such a duty existed.

## II.

### Discussion

#### A.

### Standard of Review

■ Our review in this case is limited to the circuit court's conclusions of law in apply-

---

1. In the proceedings below, the sheriff's deputies denied that they had formally arrested Mr. Hoover. The circuit judge concluded, for purposes of a summary judgment decision, that the undisputed use of the handcuffs by the officers under the circumstances could be assumed to constitute an arrest, and he decided the case based on that assumption, which was favorable to the appellant. The statement in this opinion that the appellant was arrested is in conformance with the circuit judge's assumption in making his ruling below, for the purpose of this appeal only, and is not intended to have any effect outside of this case.

ing a statute to undisputed facts. Our review of a circuit court's purely legal rulings is *de novo*. *See State, By and Through McGraw v. Imperial Marketing*, 196 W.Va. 346, 352, 472 S.E.2d 792, 798 (1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 391, 136 L.Ed.2d 307 (1996).

To establish the duty of the appellees to pay for the appellant's medical costs, the appellant relies solely upon the provisions of *W.Va.Code*, 7–8–2 [1985], which states:

> (a) The sheriff of every county shall be the keeper of the *jail* thereof, but he may, with the assent of the county commission, appoint a *jailer* of the said county, and may take from him a bond with security conditioned for the faithful performance of his duties. The *jailer* may be a deputy sheriff and shall take an oath of office like other officers. He shall keep the *jail* in a clean, sanitary and healthful condition. *When any prisoner is sick the jailer shall see that he has adequate medical and dental attention and nursing, and so far as possible keep him separate from other prisoners. Any such medical and nursing care as the jailer may be required to furnish shall be paid for by the county commission.* A failure on the part of the jailer to perform any of the duties herein required *with respect to any prisoner in his jail* shall be a contempt of any court of record under whose commitment such prisoner is confined, and shall be punished as other contempts of such court. The jailer or his agents are authorized to inquire of every prisoner at any time whether he has medical insurance or is covered by a public medical benefit, to further inquire of the prisoner sufficient information to enable the county commission to seek reimbursement of health care costs as provided by this section and to take an assignment of the right to reimbursement from said third parties.
>
> (b) The county commission is hereby authorized to seek reimbursement from every person who receives medical, dental, hospital or eye care or any type of nursing care *while incarcerated in the jail* at the rate at which the care is generally available in the community for those persons not incarcerated, from their private health care insurers, if any, to the extent of the coverage in effect, from any public agency then providing medical benefits to the person *incarcerated* to the extent that said public agency would have reimbursed the cost of the care rendered if the person receiving the care was not then *incarcerated* so long as said reimbursement is not inconsistent with the lawful provisions of the agency's benefit program, or from persons who are liable pursuant to section twenty-two, article three, chapter forty-eight of this code: Provided, That no reimbursement for care shall be required when any medical, dental, hospital or eye care or ·any type of nursing care has been rendered for injuries or illnesses sustained as a result of an act by another prisoner, injuries or illnesses sustained where an act or omission by the jailer or any deputy sheriff has been a contributing factor, or injuries or illnesses resulting from fire or other catastrophic hazard, all without fault on the part of the prisoner: Provided, however, That no reimbursement for the care received from the person receiving the care or from the person made liable for the care by section twenty-two, article three, chapter forty-eight of this code shall be sought unless that person is able to pay without undue hardship considering the financial resources of the person, the ability to pay of the person and the nature of the burden that reimbursement will impose: Provided further, That the determination of undue hardship by the commission does not preclude the commission from subsequently ordering reimbursement should the person's financial circumstances change: And provided further, That whenever the county commission seeks reimbursement from a municipality for medical, dental, hospital, eye or nursing care authorized by this subsection then the municipality shall also be hereby authorized to seek reimbursement as provided for in this subsection for counties under the same conditions.
>
> \* \* \* \* \* \*
>
> (d) Subject to any statutes of limitation, if reimbursement pursuant to this section

was sought at or within a reasonable time after the *release from incarceration* of the person receiving the goods or care and if the reimbursement authorized by this section has not been received within one year the county commission or municipality, as the case may be, may prosecute a civil action against any liable person and against any insurer or agency the assignment of whose obligation to pay for care was obtained by the jailer. Any funds paid to or collected by the county commission or municipality pursuant to the provisions of this section shall be deposited to its general fund. (emphasis added).

It is evident that the language of *W.Va. Code,* 7–8–2 [1985] is primarily concerned with the responsibilities of the sheriff when acting as a jailer, caring for prisoners while they are incarcerated in jail, and with the responsibilities of the county commission to pay for the costs of medical care for prisoners who are incarcerated in jail.

 The appellant was never a prisoner incarcerated in jail.[2] Furthermore, the circuit court concluded that the appellant was under arrest only from the time he was put in handcuffs until the time he was examined at the local hospital. Therefore, at the time that the appellant received the medical treatment at issue in this case, the appellant had been released from the sheriff's custody.[3]

 We need not and we do not decide whether or under what particular circumstances *W.Va.Code,* 7–8–2 [1985] creates a duty by a sheriff and county commission to persons who are in custodial situations or conditions other than incarceration in jail. Our decision is limited to the conclusion that

W.Va.Code, 7–8–2 [1985] does not require a sheriff to provide or a county commission to pay for medical treatment for a person who is not in the custody of the sheriff or his officers.

The appellant relies upon several West Virginia Attorney General Opinions interpreting *W.Va.Code,* 7–8–2 [1985] as support for the contention that the appellees had a duty to pay for the medical care that the appellant received after the sheriff's deputies brought the appellant to the local hospital in handcuffs. Particularly pertinent are 44 *Op. Att'y Gen.* 16 (1950); 51 *Op. Att'y Gen.* 41 (1964); and 51 *Op. Att'y Gen.* 348 (1965).

44 *Op. Att'y Gen.* 16, 18 (1950) states, in part:

[W]hen a person arrested by a deputy sheriff, in need of medical attention due to wounds suffered before or after his arrest, is taken to a hospital where necessary medical attention is rendered, the county court [county commission] is liable for the cost of hospitalization and medical attention under Code, 7–8–2, even though the prisoner may not have been confined in jail before being taken to the hospital.

51 *Op. Att'y Gen.* 348, 352 (1965) states:

Each county court [county commission] is liable for the medical and hospital expenses of prisoners delivered directly to a hospital by a sheriff and his deputies without first being placed in the county jail.

51 *Op. Att'y Gen.* 41, 43 (1964) states:

[A] county court [county commission], pursuant to Code 7–8–2, is now liable for the cost of hospitalization and medical attention given an arrested person who is in

2. "Incarceration" is defined in the *Oxford English Dictionary* as "to shut up in prison, to put in confinement; to imprison."

3. What constitutes "custody" for various purposes, and when custody begins and ends, has been litigated extensively in the criminal law area. *See, e.g., State v. Jones,* 193 W.Va. 378, 456 S.E.2d 459 (1995). "The term custody is defined as being 'very elastic and may mean actual imprisonment or physical detention or mere power, legal or physical, of imprisoning or of taking manual possession.' Black's Law Dictionary 347 (5th ed.1979)." *Craigo v. Legursky,* 183 W.Va. 678, 680 n. 3, 398 S.E.2d 160, 162 n. 3 (1990)

(when a convict left a work release center without permission the act constituted escape from the custody of correctional officer, even though the inmate was not incarcerated in the penitentiary).

Incarceration is one form of custody. *Cf. W.Va.Code,* 27–7–5 [1977], which governs the treatment of persons who escape from mental institutions, and states:

A person who is taken into custody under this section may be detained, but not incarcerated in a jail or penal institution, for a period not in excess of fourteen hours, pending return to the appropriate mental health facility.

need of immediate medical attention, regardless of whether the injury was suffered before or after arrest[.]

 This Court has consistently held that opinions of the attorney general are not precedential or binding upon this Court. *See, e.g., Matter of Vandelinde*, 179 W.Va. 183, 189, 366 S.E.2d 631, 637 (1988). In *Mohr v. County Court of Cabell County*, 145 W.Va. 377, 406, 115 S.E.2d 806, 821 (1960), Justice Haymond, dissenting, stated:

> The opinion of the attorney general, also cited and relied upon by the majority, though entitled to weight and consideration, is merely the individual official view of that high executive legal advisor and law enforcement officer of this State, and is not in any sense authority binding upon this Court. During the course of the years this Court has in some instances accepted the opinion of the attorney general and agreed with his views and conclusions, and in other instances has rejected them and completely disagreed with his views and conclusions.

A careful review of the opinions of the attorney general upon which the appellant relies discloses that in each factual situation upon which the attorney general was commenting, there was no evidence that the prisoner in question had been released from the sheriff's custody prior to receiving the medical treatment in question. Therefore, the "holdings" in the attorney general's opinions relied upon by the appellant are factually distinguishable from the case of the appellant, who had been released from custody.

Additionally, the attorney general's opinions in question rely principally upon *Spicer v. Williamson*, 191 N.C. 487, 132 S.E. 291 (1926) and upon *Miller v. County of Dickinson*, 68 Iowa 102, 26 N.W. 31 (1885). In both of those cases, it appears that the sheriff maintained some form of custody over the arrested prisoners when they received the medical treatment in question. Under those circumstances and under the particular laws of those states, the courts held that the counties were responsible for the cost of the medical treatment. But because the *Spicer* and *Miller* cases do not arise from a situation where a person who has been released from custody receives medical treatment, the opinions in those cases are not persuasive on the precise issue before this Court in the instant case.

### III.

### *Conclusion*

For the foregoing reasons, the judgment of the Circuit Court of Nicholas County is affirmed.

Affirmed.