765 S.E.2d 583

Roger E. CLINE, Petitioner
Below, Petitioner

v.

Patrick A. MIRANDY, Warden, St. Marys
Correctional Center, Respondent
Below, Respondent.

No. 13–1200.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 30, 2014.

Decided Nov. 3, 2014.

Matthew A. Victor, Victor Victor & Helgoe LLP, Charleston, WV, for Petitioner.

Patrick Morrisey, Attorney General, Derek Austin Knopp, Assistant Attorney General, Charleston, WV, for Respondent.

WORKMAN, Justice:

This action is before the Court upon the appeal of Petitioner Roger E. Cline from the November 7, 2013, order of the Circuit Court of Greenbrier County, West Virginia dismissing his petition for habeas corpus.[1] West Virginia Code § 53–4A–1(a) (2008), provides, in part, that "[a]ny person convicted of a crime and incarcerated under sentence of imprisonment ... may file a petition for a writ of habeas corpus ad subjiciendum[.]" The question in this case is whether an inmate who was incarcerated at the time he filed a petition for habeas corpus, but was placed on parole while the petition was pending, is "incarcerated" for purposes of West Virginia Code § 53–4A–1(a), thereby conferring subject matter jurisdiction on the circuit court to hear his claims. The circuit court dismissed petitioner's habeas corpus action as moot in light of his release from incarceration. For the reasons that follow, we affirm the order of the circuit court.

## I. FACTUAL AND PROCEDURAL HISTORY

In 1990, petitioner shot Todd McQuaid in the head at close range and killed him. Thereafter, petitioner drove the body to Ohio, where he disposed of it. In 1992, a jury convicted petitioner of first degree murder. Following the jury's recommendation,

---

**1.** Pursuant to Rule 41(c) of the West Virginia Rules of Appellate Procedure, we have replaced respondent's name with Patrick A. Mirandy, Warden. The initial respondent on appeal, William M. Fox, is no longer the warden at St. Marys Correctional Center.

petitioner received a life sentence with the recommendation of mercy. Petitioner's direct appeal to this Court was refused later that year.

In 1995, petitioner filed his first petition for writ of habeas corpus in which he alleged (1) ineffective assistance of trial counsel; (2) prosecutorial misconduct during the State's summation; (3) error in the introduction into evidence of petitioner's self-incriminating testimony offered at the prior trial of a co-defendant; and (4) errors in the jury instructions. The circuit court denied the petition. Thereafter, this Court denied his appeal.

Petitioner filed the current petition for writ of habeas corpus in 2006. The circuit court appointed counsel and directed that he file an amended petition if required. The circuit court appointed a number of different attorneys to represent petitioner and, consequently, the matter did not move forward for several years. Petitioner's current counsel filed an amended petition for writ of habeas corpus in 2012. Petitioner alleged (1) ineffective assistance of the original habeas corpus counsel; (2) grounds which had not been raised in the first habeas corpus action or which had not been waived by the *Losh* mandate,[2] such as petitioner's mental state at the time of his statement to law enforcement officers; (3) newly discovered evidence; (4) his diminished capacity defense which was not fully investigated and exhausted at trial and in the first habeas corpus petition[3]; (5) substantive change in the law in the area of diminished capacity; (6) ineffective assistance of trial counsel; and (7) cumulative error in the original criminal proceedings. The circuit court scheduled an omnibus habeas corpus hearing for October 3, 2013.

2. *See Losh v. McKenzie,* 166 W.Va. 762, 277 S.E.2d 606 (1981).

3. Petitioner asserts his IQ of 71 places him in the third percentile of the United States' population in terms of intelligence.

4. Petitioner went to his mother's home in Powhatan Point, Ohio.

5. As part of the parole agreement, petitioner agreed to
 1. Not violate any criminal laws of this or any state or of the United States.

On June 6, 2013, petitioner was paroled.[4] In addition to the standard parole restrictions,[5] the West Virginia Parole Board banned petitioner from Greenbrier County, West Virginia. He is also prohibited from having any contact with the victim's family or the co-defendants.

Before the omnibus habeas corpus hearing went forward on the merits, Respondent Warden, St. Marys Correctional Center, filed a motion to dismiss the petition for writ of habeas corpus as moot because petitioner was released from incarceration during the pendency of this matter. On October 3, 2013, the circuit court heard arguments on respondent's motion. By order entered November 7, 2013, the circuit court dismissed the petition as moot because (1) petitioner no longer satisfied the statutory requirement of being incarcerated under West Virginia Code § 53–4A–1(a); and (2) petitioner received the relief he sought in the habeas corpus petition: release from respondent's custody. Petitioner appeals this order.

## II. STANDARD OF REVIEW

■ This Court reviews appeals of circuit court orders denying habeas corpus relief under the following standard:

"In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syllabus point 1, *Mathena v. Haines,* 219 W.Va. 417, 633 S.E.2d 771 (2006).

2. Not leave the State of West Virginia without the written permission of the Commissioner of Corrections.or an authorized agent.
 3. Comply with and abide by all the rules and regulations prescribed by the Commissioner, Division of Corrections or an authorized agent.
 4. If arrested in another state during the period of [his] parole, [he will] waive extradition and will not resist being returned by order of the West Virginia Division of Corrections.

Syl. Pt. 1, *State ex rel. Franklin v. McBride*, 226 W.Va. 375, 701 S.E.2d 97 (2009). With these principles in mind, we consider the arguments of the parties.

## III. DISCUSSION

 In this case, petitioner invites this Court to extend the meaning of incarceration set forth in West Virginia Code § 53–4A–1(a) to encompass parole. When presented with a matter of statutory interpretation, we generally "look first to the statute's language. If the text, given its plain meaning, answers the interpretive question, the language must prevail and further inquiry is foreclosed." *State ex rel. Roy Allen S. v. Stone*, 196 W.Va. 624, 630, 474 S.E.2d 554, 560 (1996) (internal quotations, citation, and footnote omitted). This case is different, however, due to the unique nature of habeas corpus. The "Great Writ" is substantially more than a legislative enactment; it is a product of its constitutional status. Therefore, the habeas corpus jurisdictional statute implements the constitutional demand that the writ of habeas corpus be made available. "Mirroring the prerevolutionary English experience, the Framers intended to provide a permanent constitutional protection for individual rights *by* protecting the role of the courts in detention cases—a protection that would be utterly meaningless if it turned in any way on popular will and/or legislative whim." Stephen I. Vladeck, *Common–Law Habeas and the Separation of Powers*, 95 Iowa L.Rev. Bull. 39, 41 (2010) (emphasis original).

We appreciate the significant separation-of-powers question necessarily implicated whenever the Legislature enacts laws affecting the right of an inmate to petition for a writ of habeas corpus.[6] That right is a vital safeguard in our society. The right to petition for habeas corpus relief is recognized in the Constitution of the United States.[7] Further, the Constitution of West Virginia provides: "The supreme court of appeals shall have original jurisdiction of proceedings in habeas corpus[.]" W.Va. Const. art. VIII, § 3. Similarly, the circuit courts are constitutionally vested with original and general jurisdiction in proceedings in habeas corpus. W.Va. Const. art. VIII, § 6. *See also* W.Va. Const. art. III, § 4 ("Suspension Clause") ("The privilege of the writ of habeas corpus shall not be suspended.").

 "The privilege of the writ of habeas corpus exists independent of statute and flows from the constitution for the protection of all whose liberty may be restrained under unlawful authority although its functioning may be reasonably regulated by the legislature." 39 C.J.S. *Habeas Corpus* § 5 (2014). Thus, the Legislature cannot impose restrictions that would unconstitutionally remove the courts' constitutional jurisdiction over habeas corpus matters in violation of the Suspension Clause. However, the Legislature may enact laws affecting the procedures governing the writ of habeas corpus. We acknowledge

> the peculiar position habeas corpus occupies in our legal system. History shows that the writ is simultaneously a creature of statute, a constitutional imperative, and a fundamental precept of centuries of common law.[8] It cuts across the conventional taxonomy of common law, constitutionalism, and legislative enactment. Like a three-legged stool, it rests equally on each of these primary sources of law.

Evans Wohlforth, *Theories, a Meta–Theory, and Habeas Corpus*, 46 Rutgers L.Rev. 1395, 1401 (1994) (footnote added).

In *Boumediene v. Bush*, 553 U.S. 723, 128 S.Ct. 2229, 171 L.Ed.2d 41 (2008), Justice Kennedy discussed the significance of the

---

6. This issue was raised by Justice Albright in his dissent in *State ex rel. McCabe v. Seifert*, 220 W.Va. 79, 640 S.E.2d 142 (2006), when he expressed his "genuine dismay" with the "majority's seeming surrender of this Court's constitutionally bestowed power in habeas corpus matters." *Id.* at 86, 640 S.E.2d at 149.

7. "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. Art. I, § 9 ("Suspension Clause").

8. *See Ex parte Watkins*, 28 U.S. 193, 202, 3 Pet. 193, 7 L.Ed. 650 (1830) ("The writ of *habeas corpus* is a high prerogative writ, known to the common law, the great object of which is the liberation of those who may be *imprisoned* without sufficient cause.") (emphasis added).

Suspension Clause to the rights of those detained:

> The [Suspension] Clause protects the rights of the detained by a means consistent with the essential design of the Constitution. It ensures that, except during periods of formal suspension, the Judiciary will have a time-tested device, the writ, to maintain the "delicate balance of governance" that is itself the surest safeguard of liberty. *The Clause protects the rights of the detained by affirming the duty and authority of the Judiciary to call the jailer to account.* The separation-of-powers doctrine, and the history that influenced its design, therefore must inform the reach and purpose of the Suspension Clause.

128 S.Ct. at 2247 (2008) (quoting *Hamdi v. Rumsfeld,* 542 U.S. 507, 536, 124 S.Ct. 2633, 159 L.Ed.2d 578 (2004)) (emphasis added and citations omitted).[9]

With this background to guide us, we now turn to the sole issue raised in this appeal. Petitioner argues that the circuit court erred in dismissing his petition for writ of habeas corpus as moot. Petitioner argues that because he is on parole, he remains in custody of the State subject to severe restrictions upon his liberty. In support of his argument, petitioner leans heavily on the United States Supreme Court's decision in *Jones v. Cunningham,* 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963). The Supreme Court held that in view of the restraints and conditions of the parole order, the parolee was in "custody" sufficient to give the United States District Court jurisdiction under 28 United States Code § 2241 (2008). The decision, however, rested on non-constitutional grounds; it was based solely on a statutory

analysis of 28 United States Code § 2241. Therefore, *Jones,* while persuasive, does not control the current issue before this Court.

Respondent counters that the petition for habeas corpus is now moot because petitioner, a parolee, is not incarcerated within the meaning of West Virginia Code § 53–4A–1(a). Respondent asserts petitioner's argument lacks merit because there is a clear distinction between "incarceration" and "custody" in the statutes and caselaw.

To address petitioner's argument, we provide a short history of our State statute, including the model act that underlies West Virginia Code §§ 53–4A–1 to 11, and the federal habeas corpus statute.[10] In 1948, the United States Congress enacted the habeas corpus statute found in 28 United States Code § 2254. Congress further provided for the disposition of habeas corpus petitions, a procedure including such non-appellate functions as the allegation of facts,[11] the taking of depositions and the propounding of interrogatories,[12] the introduction of documentary evidence,[13] and the determination of facts at evidentiary hearings.[14] Significantly, under the federal statute, an applicant must be *"in custody* pursuant to the judgment of a State court" to petition for a writ of habeas corpus. 28 U.S.C. § 2254(d) (emphasis added). As discussed above, the United States Supreme Court interpreted this provision and held that parole "involves significant restraints on petitioner's liberty" such that it is a custody status warranting a habeas review. *Jones,* 371 U.S. at 243, 83 S.Ct. 373.

■ The West Virginia Legislature promulgated the Post–Conviction Habeas Corpus Act in 1967, based on the 1955 Uniform

---

9. In *Boumediene,* the Supreme Court held the Suspension Clause applied to the detention of non-citizen "enemy combatants" at the United States Naval Station at Guantanamo Bay, Cuba, and that the Military Commissions Act (MCA) of 2006—which precluded federal jurisdiction over such petitions—failed to provide an adequate alternative to the writ of habeas corpus. 128 S.Ct. at 2274. As such, the *Boumediene* majority concluded the MCA violated the Suspension Clause, and petitioners were entitled to the privilege of habeas corpus to challenge the legality of their detention. *Id.*

10. *See* John S. Gillig, *Kentucky Post–Conviction Remedies and the Judicial Development of Kentucky Rule of Criminal Procedure 11.42,* 83 Ky. L.J. 265, 279–95 (1994–95) (providing extensive discussion of judicial development of federal habeas corpus leading to states' post-conviction habeas corpus laws).

11. 28 U.S.C. § 2242.

12. *Id.* at § 2246.

13. *Id.* at § 2247.

14. *Id.* at § 2254(d).

Post–Conviction Procedure Act ("1955 Model Act").[15] This legislation

> provides a comprehensive remedy for West Virginia prisoners to collaterally attack their convictions or sentences.... The new statute enlarges the number of courts which have jurisdiction to entertain habeas corpus petitions, and it provides for proceedings in forma pauperis, appointment of counsel, procurement of records and transcripts, evidentiary hearings, and appellate review. As the district judge correctly observed [in *Kidd v. Coiner*, 299 F.Supp. 1380, 1383 (N.D.W.Va.1969) ], the new statute fully meets the suggestions of Congress and the federal courts that states enact adequate post-conviction remedies.

*Leftwich v. Coiner*, 424 F.2d 157, 159 (4th Cir.1970) (footnote omitted). In syllabus point one of *Adams v. Circuit Court of Randolph Co.*, 173 W.Va. 448, 317 S.E.2d 808

15. In 1955, upon recognizing the weaknesses and variations in *state post-conviction procedures*, the National Conference of Commissioners on Uniform State Laws drafted the Uniform Post–Conviction Procedure Act. *See* Handbook of the National Conference of Commissioners on Uniform State Laws and Proceedings of the Annual Conference Meeting in its Sixty–Fourth Year 202 (1955). The Commissioners proposed model legislation which provided that "[a]ny person convicted of a felony and incarcerated" may petition for habeas relief. *Id.* at 209. During the drafting of this model legislation, the Commissioners noted: "Although these remedies were designed to protect those who were illegally imprisoned, they have in many instances served to clog the courts with unfounded claims alleging improper conviction procedures." *Id.* at 202. The Commissioners' main focus when drafting this legislation was to protect court dockets from unnecessary litigation and to expedite trials and direct appeals for those in need of relief. *Id.*

16. In 1999, this Court adopted the Rules Governing Post–Conviction Habeas Corpus Proceedings in West Virginia. Those rules

> blend to create a balanced system that *contemplates the rights of the inmate petitioners as well as the interests of the court system.* Under the foregoing rules, an inmate may initiate a post-conviction habeas corpus proceeding with a relatively simple petition that requires only minimal information. Once a petition is filed, the circuit court has numerous means at its disposal to assure that petitioners asserting claims that appear meritorious have available the means necessary to create an adequate record to support those claims. At the same time, however, the circuit court retains the power to prevent abuses and unnecessary bur-

(1984), this Court held: "The intent of the Post–Conviction Habeas Corpus Act, West Virginia Code, 53–4–1 *et seq.*, as amended, was to liberalize rather than restrict, the exercise of the writ of habeas corpus in criminal cases." [16]

■ West Virginia Code § 53–4A–1(a) (2008), provides, in part, that "[a]ny person convicted of a crime and *incarcerated* under sentence of imprisonment ... may file a petition for a writ of habeas corpus ad subjiciendum[.]" (Emphasis added). Importantly, in 1967, when the Legislature chose to adopt terms different than those in the 1948 federal habeas corpus statute, it also rejected model state legislation that had been proposed the previous year that used the term "custody." [17] Instead, the Legislature used the term "incarcerated" from the 1955 Model Act.[18] Therefore, the predicate for filing, pur-

> dens on the court system when habeas corpus petitions are without merit.
>
> *State ex rel. Wyant v. Brotherton*, 214 W.Va. 434, 440, 589 S.E.2d 812, 818 (2003) (emphasis added).

17. In 1966, the Commissioners published the Second Revised Uniform Post–Conviction Procedure Act. *See* Suggested State Legislation Vol. 26 D–20 (1966). The Second Revised Act, like the federal habeas statute, expanded habeas relief to any person who is "in custody or other restraint." *Id.* § 1(a)(5). The Commissioners' revisions were "designed to ... assure that the relief afforded by the statute is available to persons convicted of crime, even though they may not be serving sentences of imprisonment." *Id.*

18. Over the past forty-seven years, our Legislature has never amended the language in the Post–Conviction Habeas Corpus Act. We note, however, the Legislature expanded the right to file a petition for a writ of habeas corpus in other circumstances.

> For example, *W.Va.Code*, 53–4–1 (1923), provides for the granting of habeas relief to a person "detained without lawful authority," and, in *W.Va.Code*, 49–5–14(b) (1999), the right to seek release by habeas corpus in juvenile matters is acknowledged. Moreover, *W.Va. Code*, 27–5–5 (1974), recognizes the right to petition for habeas relief in involuntary hospitalization cases, and *W.Va.Code*, 48–1–222 (2001), defines a domestic relations action as including an action to allocate custodial responsibility and determine decision-making responsibility or to otherwise determine child custody, "as in an action petitioning for a writ of habeas corpus wherein the issue is child custody."

suing, and vesting the circuit court with subject matter jurisdiction is a petitioner's incarceration. In *State ex rel. Richey v. Hill*, 216 W.Va. 155, 160–61, 603 S.E.2d 177, 182–83 (2004), this Court observed that West Virginia Code § 53–4A–1(a) established a jurisdictional base for habeas relief: "[H]abeas lies only for one 'convicted of a crime and incarcerated under sentence of imprisonment therefore[.]' "

■ Exceptionally important to our separation-of-powers concerns outlined above, the enactment of the Post–Conviction Habeas Corpus Act was consistent with this Court's precedent that "[a] proceeding in habeas corpus is the proper method of testing the legality of petitioner's *confinement*." *State ex rel. Medley v. Skeen*, 138 W.Va. 409, 413, 76 S.E.2d 146, 148 (1953) (emphasis added).[19] We therefore find no Suspension Clause infringement because the Legislature did not impose a more stringent restriction on an inmate's constitutional right to petition for habeas corpus relief. This Court has never held that an inmate's constitutional right to petition for a writ of habeas corpus follows him or her through the prison door upon release of confinement.

"Incarcerated is defined as 'confinement in a jail or [in a] penitentiary.' " *State ex rel. Goff v. Merrifield*, 191 W.Va. 473, 477, 446 S.E.2d 695, 699 (1994) (citing Black's Law Dictionary 760 (6th ed.1990)). Incarceration is not synonymous with custody. While all incarceration is a form of custody, the converse is not true. *See Hoover v. Blankenship*, 199 W.Va. 670, 673 n. 3, 487 S.E.2d 328, 331 n. 3 (1997) (discussing "very elastic" nature of custody compared to incarceration).

■ This Court has never directly addressed the issue of whether parole restrictions constitute the qualifying level of incarceration for purposes of seeking post-conviction habeas corpus relief.[20] Some courts have taken the view that the conditions of parole sufficiently restrain the parolee's liberty so as to entitle him to petition for relief by writ of habeas corpus. *See e.g., Ex parte Bandmann*, 51 Cal.2d 388, 333 P.2d 339, 344–45 (1958) ("As a prisoner upon parole, petitioner is constructively a prisoner under sentence in the legal custody and under the control of the Department of Corrections. Such release does not render this proceeding moot.") (citation omitted); *Garnick v. Miller*, 81 Nev. 372, 403 P.2d 850, 852 (1965) ("[N]either confinement nor imprisonment is a requisite for habeas relief—unlawful restraint is enough. The [habeas corpus] statute is of sufficient latitude to embrace one on probation[.]").

Other courts have taken the view that a parolee is not restrained of his liberty to such a degree as is necessary to entitle him to petition for relief by writ of habeas corpus. *See, e.g., Sorrow v. Vickery*, 228 Ga. 191, 184 S.E.2d 462, 462 (1971) (holding appellant's release from confinement on parole rendered case moot because "it is fundamental that habeas corpus is available to test the legality of present confinement only and if the applicant is no longer incarcerated there is nothing for the courts to adjudicate.") (citations omitted); *People ex rel. Williams v. Morris*, 44 Ill.App.3d 39, 2 Ill.Dec. 631, 357 N.E.2d 851, 853 (1976) (rejecting "constructive custody" argument and holding history and nature of habeas corpus requires actual custody to maintain action).

Petitioner attempts to equate his case with this Court's decision in *Elder v. Scolapia*, 230

*McCabe*, 220 W.Va. at 82, 640 S.E.2d at 145.

19. *See also Ex parte Mooney*, 26 W.Va. 36, 1885 WL 2604 (1885) (jurisdiction in habeas corpus proceedings acts directly on effect of judgment; question is whether prisoner is illegally detained).

20. In dismissing the underlying action, the circuit court relied on *Kemp v. State*, 203 W.Va. 1, 506 S.E.2d 38 (1997). In *Kemp*, the inmate sought relief in a habeas corpus proceeding claiming that he was denied effective assistance of counsel at his trial and that the trial court had committed certain trial errors. *Id.* at 1, 506 S.E.2d at 38. The circuit court denied him relief in a habeas corpus proceeding and he appealed. One week prior to oral arguments before this Court, the inmate was released from the penitentiary. *Id.* We held "the extraordinary relief offered by the post-conviction writ of habeas corpus" was no longer available and dismissed the case as moot. *Id.* at 2, 506 S.E.2d at 39. However, our decision in *Kemp* notably does not state whether the inmate was placed on parole.

W.Va. 422, 738 S.E.2d 924 (2013), wherein we determined that "an offender who has been sentenced pursuant to the Home Incarceration Act [West Virginia Code §§ 62–11B–5 to –13 (2010) ] and is accordingly subject to substantial restrictions on his or her liberty by virtue of the terms and conditions imposed by a home incarceration order ... is 'incarcerated under sentence of imprisonment' for purposes of seeking post-conviction habeas corpus relief under West Virginia Code § 53–4A–1." 230 W.Va. at 428, 738 S.E.2d at 930.

We find *Elder* to be easily distinguishable from the case at hand. Our holding in *Elder* was motivated, in part, by the Legislature's decision to retitle the Home Confinement Act to the Home Incarceration Act which suggested "a legislative recognition that individuals who are serving their criminal sentences within the confines of their respective homes are to be viewed as incarcerated rather than merely confined." *Id.* at 428, 738 S.E.2d at 930. More importantly, our decision was based on the significant liberty restrictions placed upon a person on home confinement. West Virginia Code § 62–11B–5 requires that an order for "home incarceration" include a requirement that the offender be confined to his or her home at all times as well as a requirement that the offender abide by a schedule which specifically sets forth the times when he or she may be absent from the home and the locations the offender is allowed to be during those absences. We recognized that a person on home confinement "does not enjoy the liberty to freely wander the physical confines of his yard, let alone his community, this state, or this country." 230 W.Va. at 428, 738 S.E.2d at 930. An order for home incarceration necessarily means that the individual does not have "the freedom to come and go as he pleases; his daily activities are subject to both the supervision and control of the Home Incarceration Office." 230 W.Va. at 427, 738 S.E.2d at 929.

When we compare the extensive restrictions to an individual's freedom when placed on home confinement to the limited restrictions placed on those paroled, we are left with the firm opinion that a parolee is no longer entitled to seek post-conviction habeas corpus relief. We recognize that a parolee remains at all times in the legal custody of the West Virginia Division of Corrections. However, a parolee is not imprisoned and is subject to re-imprisonment only if he or she violates a condition of parole.

The essence of parole is release from prison, before completion of the sentence, on condition that the prisoner abide by certain rules during the balance of the sentence. Otherwise stated, parole is the conditional release from imprisonment that entitles the parolee to serve the remainder of his or her term outside the confines of an institution if the parolee satisfactorily complies with all the terms and conditions provided in the parole order. The purpose of parole is to help individuals reintegrate into society as constructive individuals as soon as they are able, without being confined for the full term of the sentence imposed, and alleviate the cost to society of keeping the individual in prison.

59 Am.Jur.2d *Pardon and Parole* § 6 (2014) (footnotes omitted).

Notably, no one has physical custody of an individual placed on parole; he or she is not detained, confined, or incarcerated. An individual placed on parole enjoys the liberty to leave his or her home to participate in a variety of activities. Among other things, an individual on parole is free to walk the streets of his or her neighborhood; eat at restaurants and shop at retail stores; enjoy the benefits of gainful employment; visit friends and relatives; go to sporting events and cultural shows; and attend his or her place of worship.

Based on the foregoing, we hold that an inmate who has been released from incarceration and placed on parole is no longer "incarcerated under sentence of imprisonment" for purposes of seeking habeas corpus relief under the Post–Conviction Habeas Corpus Act, West Virginia Code §§ 53–4A–1 to –11 (2008). In West Virginia, an inmate's right to petition for post-conviction habeas corpus relief ends when he or she is released from incarceration.

In *State ex rel. McCabe v. Seifert,* 220 W.Va. 79, 85, 640 S.E.2d 142, 148

(2006), this Court found that in light of the inmate's release from incarceration, "in combination with: (1) his withdrawal of a substantial portion of the appeal from this Court's consideration and (2) the fact that he raises no issues concerning the terms of his parole agreement," his appeal was moot. " 'Moot questions or abstract propositions, the decision of which would avail nothing in the determination of controverted rights of persons or of property, are not properly cognizable by a court.' Syllabus point 1, *State ex rel. Lilly v. Carter,* 63 W.Va. 684, 60 S.E. 873 (1908)." Syl. Pt. 1, *State ex rel. Durkin v. Neely,* 166 W.Va. 553, 276 S.E.2d 311 (1981). Similarly, we find petitioner's release from incarceration has rendered his petition for writ of habeas corpus moot.

## IV. CONCLUSION

As a parolee, petitioner is no longer incarcerated. Therefore, he is not entitled to seek post-conviction habeas relief pursuant to West Virginia Code § 53–4A–1(a). Accordingly, we affirm the November 7, 2013, order of the Circuit Court of Greenbrier County dismissing the habeas corpus action as moot.

Affirmed.

Justice KETCHUM, concurring:

There may be occasions after a prisoner's release when newly discovered facts, such as DNA, demonstrate the released prisoner's innocence. Under these circumstances, the released prisoner would still have a remedy under the writ of *coram nobis.*

Generally, a released prisoner may have his judgment of conviction reviewed by means of *coram nobis* when:

1. There were errors of fact relied upon in obtaining the conviction;

2. The facts were not apparent on the record and they affect the validity and regularity of the underlying proceeding;

3. The facts were unknown to the defendant or his/her lawyer at the time of the underlying proceedings, without fault on their part; and

4. The newly discovered facts, if known, would have prevented the judgment of conviction.

*See,* Franklin D. Cleckley, *West Virginia Criminal Procedure,* § II–508 (1994).