IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2017 Term

**FILED**
**February 8, 2017**

released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 16-0095

IN RE: INVOLUNTARY HOSPITALIZATION OF T.O.

Appeal from the Circuit Court of Kanawha County
Honorable Charles E. King, Judge
Civil Action No. 15-P-429

AFFIRMED

Submitted: January 11, 2017
Filed: February 8, 2017

C. Joan Parker, Esq.
Assistant Public Defender
Kanawha County Public Defender Office
Charleston, West Virginia
Attorney for the Petitioner

Patrick Morrisey, Esq.
Attorney General
Allison Carroll Anderson, Esq.
Assistant Attorney General
Andrew Dornbos, Esq.
Assistant Attorney General
Charleston, West Virginia
Attorneys for the Respondent

CHIEF JUSTICE LOUGHRY delivered the opinion of the Court.

**SYLLABUS BY THE COURT**

1. "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syl. Pt. 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

2. "An inmate who has been released from incarceration and placed on parole is no longer 'incarcerated under sentence of imprisonment' for purposes of seeking habeas corpus relief under the Post-Conviction Habeas Corpus Act, West Virginia Code §§ 53-4A-1 to -11 (2008)." Syl. Pt. 3, *Cline v. Mirandy*, 234 W.Va. 427, 765 S.E.2d 583 (2014).

3. A person who has been released from an involuntary hospitalization previously ordered in a civil commitment proceeding under West Virginia Code §§ 27-5-1 to -11 (2013) is no longer "detained" for purposes of seeking habeas corpus relief under West Virginia Code § 53-4-1 (2016).

4. "Three factors to be considered in deciding whether to address technically moot issues are as follows: first, the court will determine whether sufficient collateral consequences will result from determination of the questions presented so as to justify relief; second, while technically moot in the immediate context, questions of great public interest

i

may nevertheless be addressed for the future guidance of the bar and of the public; and third, issues which may be repeatedly presented to the trial court, yet escape review at the appellate level because of their fleeting and determinate nature, may appropriately be decided." Syl. Pt. 1, *Israel by Israel v. West Virginia Secondary Schools Activities Commission*, 182 W.Va. 454, 388 S.E.2d 480 (1989).

5. West Virginia is an appeal by right jurisdiction, which means that all properly perfected appeals are reviewed by the Court and result in a written decision on the merits in each appeal.

6. The memorandum decisions issued by the Court fully comply with Article VIII, Section 4 of the West Virginia Constitution by addressing every point fairly arising upon the record and by setting forth in a concisely stated writing the reasons for the Court's decision.

LOUGHRY, Chief Justice:

The petitioner, T.O.,[1] appeals from the January 4, 2016, order through which the Circuit Court of Kanawha County denied her petition for a writ of habeas corpus. The circuit court found her request for habeas corpus relief was mooted by her release from a mental health facility following an involuntary hospitalization for examination. Raising constitutional arguments that were not asserted in her habeas petition filed below, the petitioner asserts on appeal that the mental health commitment process under West Virginia Code §§ 27-5-1 to -11 (2013) is unconstitutionally vague because there are no clear statutory guidelines to assist nonmedical professionals and mental hygiene commissioners in making determinations that result in the deprivation of liberty to persons who are the subject of a mental hygiene proceeding. She further asserts that these same statutes are unconstitutional because an indigent litigant cannot afford the expense associated with the procedure set forth in West Virginia Code § 61-7A-5 (2014) for seeking the removal of his or her name from the state mental health registry and the restoration of his or her gun rights. Assigning error to the mental hygiene commissioner's probable cause commitment order, the petitioner alleges a lack of specific findings of fact and a failure to protect her due process rights by considering whether a less restrictive alternative to hospitalization existed. Lastly, the

---

[1]Consistent with our practice in cases involving sensitive matters, we use the initials of the petitioner and her husband. *See* W.Va. R. App. P. 40(e)(1) ("Initials or a descriptive term must be used instead of a full name in . . . mental hygiene cases . . . .").

1

petitioner contends her cause is not moot because of the collateral consequences of her temporary involuntary hospitalization.

Based upon the record, the parties' briefs, and the arguments presented, we find no error. Accordingly, we affirm the circuit court's denial of the petition for a writ of habeas corpus.

## I. Factual and Procedural Background

Around noon on September 25, 2015, the petitioner's estranged husband, R.O.[2] filed an Application for Involuntary Custody for Mental Health Examination against the petitioner, T.O., pursuant to West Virginia Code § 27-5-2. In the application, R.O. indicated that the petitioner had suffered from symptoms of bipolar disorder intermittently for five years; that she had assaulted him in the past; and that she had recently threatened him. R.O. represented that the petitioner had been combative, resulting in an emergency room visit with an injury to his leg; that he had left his home fearing for his life; and that the petitioner had sent several threatening texts to him and to her stepdaughter. R.O. also stated that the petitioner had spit, punched, bitten, and kicked him in the past, and he expressed fear that the petitioner losing her job earlier that day would "put her over the edge." He further reported

---

[2]There is no information in the parties' briefs or the appendix record concerning the parties' current marital status.

2

that T.O. appeared at his workplace the previous day,[3] demanded to see him, and refused requests that she leave the premises until she was threatened with arrest if she did not do so. The application also contained allegations that the petitioner was currently manic; that she had experienced suicidal thoughts in the past; and that she possessed a .22 caliber handgun for which she had a concealed carry permit.

Within a few hours of the application being filed, the petitioner was examined by a licensed psychologist. In the Certificate of Licensed Examiner ("certificate"), which was filed in the circuit court the same day, the evaluating psychologist opined that the petitioner was mentally ill and likely to cause harm to herself or others due to her mental illness. He noted the petitioner's history of depression, marital problems, and mental health counseling, and found that she had placed others in reasonable fear of physical harm by making threats to her husband and stepdaughter. In addition, the psychologist recited his personal observations that the petitioner presented in an "argumentative manner[;]" had "rapid and pressured" speech; and was "impulsive" with "limited insight." He further conveyed the petitioner's report of agitation since she began taking steroids three weeks earlier; the loss of her job earlier that day with "no reason given;" and a disturbance in her sleep, energy, and mood. The psychologist found the petitioner to be neither suicidal nor homicidal.

---

[3]The previous day would have been September 24, 2015.

3

Recounting in his certificate the information that had been provided to him by the petitioner's husband, the psychologist stated that the petitioner had separated from her husband; had appeared at her husband's place of employment the prior day threatening she was "going to have [his] job[;]" had lost her job earlier that day due to causing a commotion at her workplace; had been physically aggressive towards her husband three years earlier; had been engaging in "bizarre behavior" during the past four to six weeks; and had threatened her stepdaughter.

Based on all of the above, the psychologist reached a diagnostic impression of "bi-polar disorder, manic"; "L/O reaction to steroids"; "alcohol abuse"; and a "[m]oderate probability" of seriously harmful behavior. He opined that "[i]mmediate hospitalization in a 24-hour locked facility needed[,]" and recommended the petitioner "be committed for further evaluation pursuant to [West Virginia Code] § 27-5-3 [*probable cause hearing only*][.]"

Later in the day of September 25, 2015, a hearing was held before a mental hygiene commissioner during which the examining psychologist testified.[4] At the conclusion of that hearing, the mental hygiene commissioner entered an order in which she made findings of fact consistent with the information in the application and psychologist's

---

[4]There is no transcript of this hearing due to what the petitioner refers to as a "mechanical failure."

certificate, as discussed above;[5] found probable cause to believe the petitioner was mentally ill and a danger to self or to others due to mental illness if she were allowed to remain at liberty; and directed the petitioner's commitment for examination at a local mental health facility, Highland Hospital. Immediately thereafter, the petitioner was involuntarily committed to Highland Hospital for evaluation.

Six days later, on October 1, 2015, the petitioner filed a petition for a writ of habeas corpus in the circuit court seeking her prompt release from custody and alleging her mental health commitment was unlawful because the psychologist's certification stated that she (1) was neither suicidal, homicidal nor psychotic; (2) had not made any attempts to harm herself or others in more than three years; and (3) had been separated from her husband for a month prior to him filing the application for her involuntary commitment. She further asserted that the mental hygiene commissioner had failed to make a finding as to whether a less restrictive alternative was available.[6] A hearing was held on October 6, 2015, during which Judge Jennifer Bailey observed that the petitioner's counsel was trying to pursue the

---

[5]We presume the mental hygiene commissioner's findings of fact and conclusions were also based on the evaluating psychologist's testimony. As indicated above, the appendix record does not contain either a transcript or recording of the mental hygiene hearing. *See* note 4, *supra*.

[6]In her habeas petition filed below, the petitioner stated that the evaluating psychologist testified he did not believe there was an appropriate, less restrictive alternative to hospitalization, but indicated on cross-examination he had not considered alternatives, such as releasing the petitioner to the care of a niece.

habeas proceeding "even though your client's literally been released."[7] Upon the petitioner's late arrival to this hearing, Judge Bailey realized she knew the petitioner and, therefore, recused herself. Thereafter, the matter was transferred to Judge Charles King.

A habeas hearing was held before Judge King on November 10, 2015. The petitioner attempted to orally raise issues that were not addressed in her habeas petition, including her inability to possess firearms[8] and the impact that the mental health proceeding could have on future, similar proceedings. Inasmuch as the petitioner had already been released from Highland Hospital, her legal counsel acknowledged "that perhaps a habeas petition is not the right method for this" and asked the circuit court to "restyle this as an appeal[.]" The circuit court declined to do so:

---

[7]The appendix record does not reflect the date on which the petitioner was released from Highland Hospital, but it was clearly sometime before this October 6, 2015, hearing. No final commitment proceeding was brought against the petitioner under West Virginia Code § 27-5-4.

[8]While no such arguments were made in her petition for a writ of habeas corpus filed in the circuit court, the petitioner did request in that petition that she "be removed from the firearms registry" once her involuntary commitment was "overturned." Presumably, the petitioner was referring to the state mental health registry. *See* W.Va. Code §§ 61-7A-1 to -5 (2014 & Supp. 2016) (establishing central state mental health registry); *see also* W.Va. Code § 61-7A-1 (Supp. 2016) (setting forth Legislature's intent to "clarify the persons whom it intends to proscribe from the possession of firearms due to mental illness; establish a process in reporting the names of persons proscribed from possession of firearms due to mental illness to the central state mental health registry; authorize reporting by registry to the National Instant Criminal Background Check System; and to prescribe a means for reinstating one's ability to lawfully possess a firearm.").

The Court: With all due respect, sir, I cannot, nor will I, convert a habeas petition into an appeal.[9]

Mr. Danford [petitioner's counsel]: I understand.

The Court: And I am not going to go beyond the issue or issues raised in the Habeas Petition. Since she is released and not in custody anymore, it's moot. So this case is dismissed.

(Footnote added.).

By order entered January 4, 2016, the circuit court denied the petitioner a writ of habeas corpus on the basis that her cause was mooted by her release from her involuntary hospitalization. This appeal followed.

## II. Standard of Review

We are asked to review a circuit court's order denying a petition for a writ of habeas corpus. In this regard, our review is threefold:

> In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.

---

[9]Appellate jurisdiction does not lie with the circuit court with regard to civil commitment orders. *See* W.Va. Code § 27-5-5 (2013) ("Any individual adversely affected by any order of commitment entered by the circuit court under this article may seek review thereof by appeal to the state supreme court of appeals and jurisdiction is hereby conferred upon such court to hear and entertain such appeals upon application made therefor in the manner and within the time provided by law for civil appeals generally.").

Syl. Pt. 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006). With these principles in mind, the parties' arguments will be considered.

## III. Discussion

The petitioner argues that the mental hygiene commissioner failed to consider a less restrictive alternative to involuntary hospitalization[10] and failed to make findings of fact sufficient to rule that she was mentally ill and likely to cause harm to herself or others if allowed to remain at liberty. Raising constitutional arguments for the first time in this appeal,[11] the petitioner contends that the civil commitment process under West Virginia Code §§ 27-5-1 to -11 is unconstitutionally vague because there are no clear statutory guidelines to assist nonmedical professionals and mental hygiene commissioners in making determinations that result in the deprivation of liberty to persons who are the subject of a

---

[10]The petitioner relies upon West Virginia Code § 27-5-4(k)(1)(D) for this argument. However, § 27-5-4 pertains to final commitment proceedings, which were never instituted against the petitioner The mental health proceeding was brought against the petitioner under West Virginia Code § 27-5-2, which provides for the institution of proceedings for the involuntary custody of an individual for examination and for a probable cause hearing.

[11]In syllabus point two of *Louk v. Cormier*, 218 W.Va. 81, 622 S.E.2d 788 (2005), this Court held that "[a] constitutional issue that was not properly preserved at the trial court level may, in the discretion of this Court, be addressed on appeal when the constitutional issue is the controlling issue in the resolution of the case." Although the petitioner argues in a rather cursory fashion that this Court should find the civil commitment process under Chapter 27, Article 5 of the West Virginia Code to be unconstitutional, her request for a writ of habeas corpus would still be mooted by her release from Highland Hospital. Accordingly, we decline to exercise our discretion to review her constitutional arguments for this reason, and for the other reasons expressed herein.

mental hygiene proceeding. She further asserts that the civil commitment process is unconstitutional because an indigent litigant cannot afford the costs associated with the procedure set forth in West Virginia Code § 61-7A-5 for seeking the removal of one's name from the state mental health registry and the restoration of one's gun rights.[12]

Urging an affirmance of the circuit court's habeas ruling, the respondent State of West Virginia argues that the petitioner's claims for relief in habeas corpus were mooted by her release from involuntary hospitalization. In the event this Court were to reach the merits of the petitioner's claims, the State asserts that the procedure set forth in West Virginia Code § 61-7A-5 to seek the removal of one's name from the state mental health registry and the restoration of one's gun privileges does not render the civil commitment process under Chapter 27, Article 5 of West Virginia Code unconstitutional, nor are these statutes unconstitutionally vague.[13] The State maintains that it would be both "impractical

---

[12]*See* W.Va. Code § 61-7A-5, in part ("(a) Any person who is prohibited from possessing a firearm pursuant to the provisions of section seven, article seven of this chapter or by provisions of federal law by virtue solely of having previously been adjudicated to be mentally defective or to having a prior involuntary commitment to a mental institution pursuant to chapter twenty-seven of this code may petition the circuit court of the county of his or her residence to regain the ability to lawfully possess a firearm. . . . (i) . . . If the order restores the petitioner's ability to possess a firearm, petitioner's name shall be promptly removed from the central state mental health registry . . . .").

[13]The State criticizes the petitioner's passing references to the Second Amendment and the constitutional right to assistance of counsel in the context of criminal proceedings, observing that neither addresses whether the mental health civil commitment process is constitutionally deficient.

9

and ineffective" to find Chapter 27, Article 5 of the West Virginia Code unconstitutional based on a challenge to the post-hospitalization process provided for in West Virginia Code § 61-7A-5. Because the petitioner has never attempted to follow the statutory procedure for seeking the removal of her name from the state mental health registry and the restoration of her gun possession rights, and because she has failed to present this Court with any evidence that she would, or could, have done so but for an inability to retain counsel or pay for a psychiatric examination, the State asserts the petitioner has no cognizable injury. Regarding the petitioner's criticism of the mental hygiene commissioner's commitment order, the State asserts that not only were the commissioner's findings of fact and conclusions sufficient to find probable cause, but the commissioner had no obligation to enter a finding on the availability of less restrictive treatment alternatives; rather, West Virginia Code § 27-5-2(h) gives a mental hygiene commissioner the discretion to release a person to a voluntary outpatient treatment program if certain criteria are met and a clinically appropriate treatment agreement can be reached.

For the reasons set forth below, we find no abuse of discretion in the circuit court's ruling that this habeas matter is moot.

**A. Mootness and Collateral Consequences**

It is axiomatic that "[a]n inmate who has been released from incarceration and placed on parole is no longer 'incarcerated under sentence of imprisonment' for purposes of seeking habeas corpus relief under the Post-Conviction Habeas Corpus Act, West Virginia Code §§ 53-4A-1 to -11 (2008)." Syl. Pt. 3, *Cline v. Mirandy*, 234 W.Va. 427, 765 S.E.2d 583 (2014).[14] Although the petitioner did not cite West Virginia Code § 53-4-1 (2016) in her petition for a writ of habeas corpus filed in the circuit court, she was clearly proceeding under that statute, which states, in part: that "[t]he writ of habeas corpus ad subjiciendum shall be granted forthwith . . . to any person . . . showing . . . probable cause to believe that he is detained without lawful authority." *See* Syl. Pt. 2, in part, *Sloan v. Wachtel*, 160 W.Va. 148, 233 S.E.2d 137 (1977) ("Proceedings by writ of habeas corpus ad subjiciendum, pursuant to provisions of the Constitution and W.Va. Code, 53-4-1 . . . are available to a person involuntarily committed for mental illness on a showing that he has probable cause to believe that he is detained without lawful authority."); *see also* W.Va. Code § 27-5-5, in

---

[14]*See also Kemp v. State*, 203 W.Va. 1, 506 S.E.2d 38 (1997) (finding petitioner's request for writ of habeas corpus mooted by his release from incarceration); *State ex rel. S.C. v. Chafin*, 191 W.Va. 184, 444 S.E.2d 62 (1994) (finding child's petition for writ of habeas corpus seeking to be removed from secure residential facility was mooted by child's removal from said facility and placement in group home); *Gamble v. Williamson*, No. 14-0804, 2015 WL 5331874 (W.Va. Sept. 11, 2015) (memorandum decision) (relying upon *Cline v. Mirandy*, 234 W.Va. 427, 765 S.E.2d 583 (2014), in upholding circuit court's dismissal of habeas petition as moot given petitioner's release on parole); *Brennan v. Dingus*, No. 14-0674, 2015 WL 1236060, *1 (W.Va. Mar. 16, 2015) (memorandum decision) ("Because petitioner fully discharged his sentence and was released from incarceration shortly after filing his petition for writ of habeas corpus, we find no error in the circuit court granting the State's motion to dismiss the same as moot.").

11

part ("This section shall not be construed to in any way limit or precondition the right to seek release of such individual by habeas corpus."). Like the prisoner for whom post-conviction habeas relief is no longer available because he or she is no longer "incarcerated under sentence of imprisonment," we hold that a person who has been released from an involuntary hospitalization previously ordered in a civil commitment proceeding under West Virginia Code §§ 27-5-1 to -11 (2013) is no longer "detained" for purposes of seeking habeas corpus relief under West Virginia Code § 53-4-1 (2016).

Acknowledging the mootness of her request for habeas relief, the petitioner contends her issues should nonetheless be addressed pursuant to *Israel by Israel v. West Virginia Secondary Schools Activities Commission*, 182 W.Va. 454, 388 S.E.2d 480 (1989), in which this Court held, as follows:

> Three factors to be considered in deciding whether to address technically moot issues are as follows: first, the court will determine whether sufficient collateral consequences will result from determination of the questions presented so as to justify relief; second, while technically moot in the immediate context, questions of great public interest may nevertheless be addressed for the future guidance of the bar and of the public; and third, issues which may be repeatedly presented to the trial court, yet escape review at the appellate level because of their fleeting and determinate nature, may appropriately be decided.

*Id.* at 455, 388 S.E.2d at 481, syl. pt. 1. Maintaining she can meet the *Israel* factors, the petitioner argues that she is being denied her Second Amendment right to possess a gun due

to her placement on the state mental health registry;[15] that gun rights are of great public importance; that the issue is "fleeting" given the brevity of confinement under an involuntary commitment; and that these collateral consequences impact anyone who proceeds through the involuntary commitment process, making this a "broad public policy issue" that should be addressed. The State counters that the petitioner cannot overcome the mootness of her cause because her collateral consequences argument was recently rejected by this Court in *In re: Involuntary Hospitalization of B.N.*, No. 12-0657, 2013 WL 1859160 (W.Va. May 3, 2013) (memorandum decision) (hereinafter "*B.N.*").

In *B.N.*, the petitioner appealed a mental hygiene commissioner's commitment order, although he had been released from his involuntary hospitalization and the proceeding concluded without a final commitment hearing. B.N. cited two collateral consequences of his mental health commitment: his placement on the state mental health registry and his inability to possess firearms pursuant to the restriction in West Virginia Code § 61-7-7(a)(4).[16] This Court found that B.N.'s placement on the state mental health registry and his

---

[15]The petitioner asserts that even if her gun rights were restored, there is another collateral consequence since the finding of mental illness and involuntary hospitalization could be used if another mental health commitment proceeding were brought against her in the future. *See* W.Va. Code § 27-1-12(b) (2013). This argument is speculative because there might never be another mental health proceeding instituted against the petitioner.

[16]West Virginia Code § 61-7-7 provides, in part, that "(a) Except as provided in this section, no person shall possess a firearm, as such is defined in section two of this article, who . . . (4) [h]as been . . . involuntarily committed to a mental institution pursuant to the
(continued...)

13

related inability to possess firearms were insufficient collateral consequences to justify relief for two primary reasons. First, this Court observed that West Virginia Code § 61-7A-5 provides a procedure whereby a person may petition the circuit court for removal from the mental health registry and for the restoration of his or her right to possess a firearm. Second, although recognizing the personal importance to B.N., this Court found that the case did not "present any questions of great public interest that must be decided for the guidance of the bar and the public" because, again, the statutory procedure under West Virginia Code § 61-7A-5 permits persons who have been involuntarily committed to petition to have their firearm rights restored. *B.N.*, at *2.

Seeking to avoid the precedent established in *B.N.*, the petitioner asks this Court to overrule *B.N.* because of the "potentially insurmountable difficulty" the process under West Virginia Code § 61-7A-5 poses for indigent individuals. The State counters that because the petitioner has a statutory remedy for her claimed injury, there is no basis for this Court to overrule *B.N.* or to address the constitutionality of the involuntary commitment statutes (West Virginia Code §§ 27-5-1 to -11) based on the post-hospitalization process provided for regaining firearm privileges (West Virginia Code § 61-7A-5). The State adds that the petitioner has no cognizable injury because she had never attempted to petition the circuit court for the restoration of her gun privileges nor has she presented this Court with

[16](...continued)
provisions of chapter twenty-seven of this code. . . ."

14

any evidence that she would or could have sought to do so but for the associated costs. We agree.

Without any evidentiary support, the petitioner speculates that a proceeding under West Virginia Code § 61-7A-5 is "an expensive and complicated legal process" that she cannot afford. Critically, the record is void of any evidence concerning the petitioner's financial status or the actual costs associated with such a proceeding. In short, there is no basis in the petitioner's arguments that would compel us to depart from our ruling in *B.N.* pertaining to the collateral consequences of which the petitioner complains. Indeed, we again find that because West Virginia Code § 61-7A-5 sets forth a procedure through which a person may petition the circuit court for the removal of his or her name from the mental health registry and for the restoration of his or her right to possess a firearm, such are not collateral consequences that warrant our review under *Israel by Israel.*

## B. Memorandum Decisions

In addition to asking this Court to overrule *B.N.*, the petitioner discounts this Court's ruling therein. The petitioner relies upon *Hammons v. West Virginia Office of the Insurance Commissioner*, 235 W.Va. 577, 775 S.E.2d 458 (2015), wherein the majority of the Court stated: "Given the abbreviated factual and legal discussion set forth in this Court's memorandum decisions, we cannot say that such prior decisions have fully considered and analyzed the applicable statutory and jurisprudential law as thoroughly and thoughtfully as does our extensive discussion of the issue herein." *Hammons*, 235 W.Va. at 594, 775 S.E.2d at 475. Although the majority's comments in *Hammons* clearly addressed a finite group of workers' compensation memorandum decisions discussed therein, rather than this Court's memorandum decisions, generally, we take this opportunity to reassure the legal community and the public that "there is no question that memorandum decisions are pronouncements on the merits that fully comply with the constitutional requirements to address every point fairly arising upon the record and to state the reasons for a decision concisely in writing." *State v. McKinley*, 234 W.Va. 143, 151, 764 S.E.2d 303, 311 (2014); *see also* Rory Perry, Clerk of Court, "Understanding the Workload of the West Virginia Supreme Court" (Dec. 2015), http://www.courtswv.gov/supreme-court/caseload-report.html ("Memorandum decisions address all properly developed assignments of error, and are not an indicator that the Court has given short shrift to an appeal.").

16

## 1. **Appeal by Right**

To place memorandum decisions in historical context, this Court promulgated extensive amendments to our Rules of Appellate Procedure, which became effective December 1, 2010. Significantly, our amended rules resulted in the "historic switch from appeals by permission to *appeals by right*[.]" *McKinley*, 234 W.Va. at 151, 764 S.E.2d at 311 (emphasis added). To be clear, West Virginia is an appeal by right jurisdiction, which means that all properly perfected appeals are reviewed by the Court and result in a written decision on the merits in each appeal. The National Center for State Courts, an independent, nonprofit court improvement organization providing research, education, and information services, recognizes West Virginia as an appeal by right state. *See* http://www.courtstatistics.org/Other-Pages/State_Court_Structure_Charts/West-Virginia.aspx.

Under our amended rules, "every properly perfected appeal . . . result[s] in a written decision on the merits." *McKinley*, 234 W.Va. at 151, 764 S.E.2d at 311. Because appeal by right greatly increased the number of written decisions issued by this Court, we created memorandum decisions through Rule 21 of our revised appellate rules. *See Hammons*, 235 W.Va. at 600, 775 S.E.2d at 481 (Loughry, J., dissenting) ("As explained in the comment to Rule 21 of the Rules of Appellate Procedure, this Court began issuing memorandum decisions in December 2010 to 'reinforce the fact that every appeal will receive a decision on the merits that sets forth the considered judgment of the Court.' W.Va.

17

R.App.P. 21 cmt."). Memorandum decisions "are issued in cases that address no new point of law"[17] and in three primary circumstances:

> when: (1) this Court finds no substantial question of law and the Court does not disagree with the decision of the lower tribunal as to the question of law; (2) upon consideration of the applicable standard of review and the record presented, the Court finds no prejudicial error; or (3) other just cause exists for summary affirmance.

*McKinley*, 234 W.Va. at 151, 764 S.E.2d at 311 (citing W.Va. R. App. P. 21(c)).

A review of our memorandum decisions issued during the last six years demonstrates that they are "distinguishable from opinions in that they address cases in which there is no substantial question of law or no prejudicial error, and are almost always used to affirm a lower court's decision." *McKinley*, 234 W.Va. at 152, 764 S.E.2d at 312. Although memorandum decisions are not published in the bound West Virginia Reports, this is attributable to cost and practicality and does not diminish their value. *See* Perry, *supra.* Our memorandum decisions, like our signed opinions, are readily available on the Court's website at www.courtswv.gov, as well as through the databases of legal research providers, such as Westlaw and LexisNexis. Indeed, we reaffirm the precedential value of our memorandum decisions, as discussed below.

## 2. Precedential Value of Memorandum Decisions

---

[17]*See* Perry, *supra.*

Whether this Court renders its decision through an opinion or a memorandum

decision,

> [t]he scope and form of the decisions of this Court are primarily
> governed by the West Virginia Constitution. Our decisions are
> required to address "every point fairly arising upon the record"
> and are "binding authority upon any court" if concurred in by a
> majority of the justices. W.Va. Const. art. VIII, § 4. With
> regard to the Court's decision to affirm, reverse, or modify the
> order of a lower tribunal, "the reasons therefor shall be concisely
> stated in writing and preserved with the record." *Id.*

*McKinley*, 234 W.Va. at 149, 764 S.E.2d at 309. As we previously explained, this Court's

"memorandum decisions are pronouncements on the merits that fully comply with the

constitutional requirements[18] to address every point fairly arising upon the record and to state

the reasons for a decision concisely in writing." *Id.* at 151, 764 S.E.2d at 311 (footnote

added). To emphasize this point further, we hold that the memorandum decisions issued by

the Court fully comply with Article VIII, Section 4 of the West Virginia Constitution by

addressing every point fairly arising upon the record and by setting forth in a concisely stated

writing the reasons for the Court's decision. Furthermore, "memorandum decisions may be

cited as legal authority, and are legal precedent"[19] through the Court's application of settled

law to the facts of a particular case. The legal community should remain mindful, however,

---

[18]*See* W.Va. Const., art. VIII, § 4, in part ("When a judgment or order of another court is reversed, modified or affirmed by the court, every point fairly arising upon the record shall be considered and decided; the reasons therefor shall be concisely stated in writing and preserved with the record[.]").

[19]Syl. Pt. 5, in part, *McKinley*, 234 W.Va. at 146, 764 S.E.2d at 306.

that "where a conflict exists between a published opinion and a memorandum decision, the published opinion controls." *Id.*

Because memorandum decisions establish legal precedent, they are subject to reversal like any other opinion of this Court. In other words, just as the value of our opinions is not diminished because they are subject to reversal, neither is the value of our memorandum decisions. While this Court has reversed prior opinions,[20] as well as prior memorandum decisions,[21] we certainly did not do so "without evidence of changing conditions or serious judicial error in interpretation sufficient to compel deviation from the

---

[20]*See, e.g.*, Syl. Pt. 6, in part, *Cherrington v. Erie Ins. Prop. & Cas. Co.*, 231 W.Va. 470, 745 S.E.2d 508 (2013) ("To the extent our prior pronouncements in Syllabus point 3 of *Webster County Solid Waste Authority v. Brackenrich and Associates, Inc.*, 217 W.Va. 304, 617 S.E.2d 851 (2005); Syllabus point 2 of *Corder v. William W. Smith Excavating Co.*, 210 W.Va. 110, 556 S.E.2d 77 (2001); Syllabus point 2 of *Erie Insurance Property and Casualty Co. v. Pioneer Home Improvement, Inc.*, 206 W.Va. 506, 526 S.E.2d 28 (1999); and Syllabus point 2 of *McGann v. Hobbs Lumber Co.*, 150 W.Va. 364, 145 S.E.2d 476 (1965), and their progeny are inconsistent with this opinion, they are expressly overruled."); Syl. Pt. 5, in part, *Matheny v. Fairmont Gen. Hosp., Inc.*, 212 W.Va. 740, 575 S.E.2d 350 (2002) ("To the extent that our opinion in *Lambert v. Great Atlantic & Pacific Tea Company*, 155 W.Va. 397, 184 S.E.2d 118 (1971), suggests otherwise, that decision is expressly overruled."); Syl. Pt. 6, *State v. Derr*, 192 W.Va. 165, 451 S.E.2d 731(1994) ("Whatever the wisdom and utility of *State v. Rowe*, 163 W.Va. 593, 259 S.E.2d 26 (1979), and its progeny, it is clear that the *Rowe* balancing test did not survive the adoption of the West Virginia Rules of Evidence. Therefore, *State v. Rowe*, *supra*, is expressly overruled because it is manifestly incompatible with Rule 403 of the West Virginia Rules of Evidence.").

[21]*See, e.g.*, *State v. Deel*, 237 W.Va. 600, __, 788 S.E.2d 741, 749 (2016) ("We . . . expressly overrule the memorandum decision in *Howard C.* only insofar as that decision directly conflicts with our established law concerning the application of ex post facto principles to the provisions of West Virginia Code § 62-12-26 and the signed opinion issued in the case sub judice.").

20

basic policy of the doctrine of stare decisis, which is to promote certainty, stability, and uniformity in the law." Syl. Pt. 2, in part, *Dailey v. Bechtel Corp.*, 157 W.Va. 1023, 207 S.E.2d 169 (1974).  As explained by the United States Supreme Court when overruling, in relevant part, two of its prior decisions,

> [a]lthough '"the doctrine of *stare decisis* is of fundamental importance to the rule of law[,]" . . . [o]ur precedents are not sacrosanct.' . . . '[W]e have overruled prior decisions where the necessity and propriety of doing so has been established.' " *Ring* [*v. Arizona*], 536 U.S., at 608, 122 S.Ct. 2428 (quoting *Patterson v. McLean Credit Union*, 491 U.S. 164, 172, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989)).

*Hurst v. Florida*, __ U.S. __, __, 136 S.Ct. 616, 623, 193 L.Ed.2d 504, 513 (2016).  Similar to the United States Supreme Court, our precedents, whether set forth in an opinion or a memorandum decision, are not sacrosanct and will be reversed where warranted by the law, just as the majority concluded in overruling the particular group of memorandum decisions in *Hammons*, 235 W.Va. 577, 775 S.E.2d 458.

In short, every properly perfected appeal in this State results in a written decision on the merits that is readily available for lawyers and judges to cite as precedent, just as the State has done in the case at bar by relying upon our decision in *B.N.*  Upon our consideration of the record before us, the parties' arguments, our precedent in *B.N.*, and for the reasons set forth above, we find the collateral consequences cited by the petitioner do not warrant our consideration under *Israel by Israel,* 182 W.Va. 454, 388 S.E.2d 480.

21

## IV.  Conclusion

For the reasons set forth above, the Circuit Court of Kanawha County's January 4, 2016, order denying the petitioner's petition for a writ of habeas corpus is hereby affirmed.

Affirmed.