# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**

**November 14, 2024**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**JACOB H.,**
**Respondent Below, Petitioner**

**v.) No. 24-ICA-147** (Fam. Ct. of Cabell Cnty. Case No. FC-06-2023-D-538)

**SIERA G.,**
**Petitioner Below, Respondent**

## MEMORANDUM DECISION

Petitioner Jacob H. ("Father") appeals from the March 7, 2024, Final Order Establishing Custodial Allocation from the Family Court of Cabell County. Respondent Siera G. ("Mother") filed a response, and Father filed a reply.[1] The issues on appeal are whether the family court erred when it found that the physical distance between the parties made 50-50 custodial allocation during the school year impractical and whether it was error to not grant Father additional time during the summer.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds that there is no error in the family court's decision, and no substantial question of law. For these reasons, a memorandum decision affirming the family court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The parties were never married but share one minor child born in 2017, who was six years old at the time of the hearing. On November 21, 2023, Mother filed her Verified Petition to Establish a Parenting Plan and Child Support which sought to have a parenting plan established that granted her the majority of the parenting time, with Father receiving parenting time on the weekends and after school on Tuesdays and Wednesdays. On January 5, 2024, Father filed his answer which sought a 50-50 custodial allocation.

A hearing was held by the family court on February 6, 2024. Father initially asked for a 2-2-3 schedule during the school year, but the family court expressed concern that the long distance from Father's home to the child's school would have a negative impact on the child's school performance and countered with an offer to give him most Thursday nights and all long weekends during the school year. Father requested additional parenting time during the summer to balance out the parenting time between the parties to achieve a

---

[1] Petitioner is represented by Alan L. Pritt, Esq. Respondent is represented by Paula L. Harbour, Esq.

1

50-50 custodial allocation, and the family court offered to split the parenting time during school breaks and vacations. Father accepted this proposal. When later asked by the family court if the Thursday overnight schedule was acceptable to him, Father replied that it was, stating "yes, absolutely, that's fine." When the family court addressed the summer schedule, it asked the parties whether they would be implementing a 2-2-3 schedule to achieve 50-50 parenting time during the summer. Both parties responded in the affirmative, with Father nodding his head and saying "yeah." Regarding child support, when the family court told Father that he would pay $619.04 per month, he indicated that the amount was more than he expected based on his use of an online child support calculator and stated "that's a lot." However, despite this apparent displeasure with the amount of child support, Father never actually made an objection during the hearing.

On March 7, 2024, the family court entered its Final Order Establishing Custodial Allocation. In that order, the family court noted that the child currently resided with Mother and that Father lived approximately 40 minutes from the child's school. The family court concluded that pursuant to West Virginia Code §48-9-209(f)(5)(A) and (D) a 50-50 allocation was impractical due to the physical distance between the parties' residences and the likelihood to disrupt the education of the child.

The family court ordered that Father would have parenting time during the school year every other weekend, Wednesday afternoon, from Thursday afternoon until Friday morning, and all long weekends.[2] During the summer, the parents would have 50-50 custody on a 2-2-3 schedule and each parent was to receive two non-consecutive weeks with the child. The family court ordered that if the parties could not agree on major holidays, then the family court's holiday schedule would apply. It is from that order that Father now appeals.

The standard of review applicable to this case is well-settled.

> When a final order of a family court is appealed to the Intermediate Court of Appeals of West Virginia, the Intermediate Court of Appeals shall review the findings of fact made by the family court for clear error, and the family court's application of law to the facts for an abuse of discretion. The Intermediate Court of Appeals shall review questions of law de novo.

Syl. Pt. 2, *Christopher P. v. Amanda C.*, 250 W. Va. 53, 902 S.E.2d 185 (2024); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court orders).

---

[2] The family court ruled that Father would forgo his Thursday night parenting time before long weekends, so that the child would not go five consecutive days without seeing his mother.

On appeal, Father raises two assignments of error. First, Father argues that the family court erred in finding that the distance from Father's home to the child's school would make a 50-50 parenting schedule impractical. In support of this argument, Father argues that he is ready and willing to transport the minor child to school and that longer commutes to school are common in a rural state like West Virginia. Physical distance and the interference of a child's education are required considerations when deciding whether the 50-50 presumption is rebutted. West Virginia Code § 48-9-209(f)(5)(A) and (D) states:

> In determining whether the presumption for an equal (50-50) allocation of physical custody has been rebutted, a court shall consider all relevant factors including any of the following . . . [w]hether an equal (50-50) physical allocation is . . . [i]mpractical because of the physical distance between the parents' residences [or] [w]ould disrupt the education of the child.

West Virginia Code § 48-9-209(f)(5)(A), (D).

The family court considered the child's young age and the effect the long morning commute would have on his ability to concentrate and learn during the school day, in light of the language in West Virginia Code § 48-9-209(f)(5)(A) and (D). Specifically, the family court noted:

> The Court has concerns with the minor child's younger age that a long morning commute will affect his ability to concentrate and learn during the school day. It is the Court's contemplation, that Fridays are more laid-back school academic days for the minor child. Therefore, a Thursday overnight during the school year has been fashioned to give the [Father] additional overnight time during the school year with the contemplation that the longer commute will have less of an effect on the minor child's attention/learning on Fridays, thereby ensuring the child's welfare.

Upon review, we cannot find that the family court erred in finding that a 40-minute commute for a young child would disrupt the child's education rendering an equal allocation impractical, given the discretion afforded to a family law court and our deferential standard of review.[3] Though this Court may have decided the case differently, we decline to substitute our judgment for that of the family court. *See Amanda A. v. Kevin T.*, 232 W. Va. 237, 245, 751 S.E.2d 757, 765 (2013) ("[A] family court's decision is

---

[3] We agree with the family court's observation made at the hearing that, as the child gets older, the distance likely no longer would be a major issue. We encourage the family court to consider the child's advancing age to be a substantial change in circumstances in light of the family court's express consideration of the tender age of the child in determining the impracticability of the drive.

entitled to significant deference. Absent an abuse of discretion, this Court must refrain from substituting its judgment for that of the family court, even if this Court might have decided a case differently."). The family court maximized Father's parenting time during the school year as much as possible by ordering that holiday breaks be split between the parties and all long weekends during the school year be given to Father. *See* W. Va. Code § 48-9-102a ("If the presumption is rebutted, the court shall . . . construct a parenting time schedule which maximizes the time each parent has with the child and is consistent with ensuring the child's welfare."). Accordingly, the family court's order finding the physical distance between the parties during the school year to be a limiting factor is not an abuse of discretion.

Second, Father alternatively contends that the family court erred in not granting him additional parenting time during the summer to balance out the additional time Mother receives during the school year. Father argues that because of this error, the family court calculated his child support using the basic shared child support calculation. Again, we defer to the family court's findings.[4] The family court considered the long weekends and split holidays awarded to Father and concluded that it was in the best interests of the child for the parties to have a 50-50 custodial allocation in the summer, to which Father agreed at the hearing. Thus, we find no error in the family court's order regarding the summer schedule.

Accordingly, we affirm the family court's March 7, 2024, order.

Affirmed.

**ISSUED:** November 14, 2024

**CONCURRED IN BY:**

Judge Charles O. Lorensen
Judge Daniel W. Greear

**CONCURRING:**

Chief Judge Thomas E. Scarr

---

[4] With regards to child support, the family court specifically found that the additional long weekends awarded to Father may warrant an extended shared parenting child support calculation in the future, which would lower his obligation.

SCARR, Chief Judge, concurring:

Although I agree and concur with the ultimate decision of the majority and affirm the family court's ruling, I must do so for different reasons. Put simply, the majority decision in this case is not consistent with the general judicial policy and practice of West Virginia appellate courts to avoid deciding issues which need not be reached to adjudicate the case. *See State v. Conner*, No. 21-0323, 2023 WL 3597530, at *3 (W. Va. May 23, 2023) (memorandum decision) (declining to reach the merits of petitioner's arguments when they waived their appeal by failing to object to the issues below); *Scherich v. Wheeling Creek Watershed Prot. & Flood Prevention Comm'n*, No. 22-0309, 2023 WL 3193211, at *2 (W. Va. May 2, 2023) (memorandum decision) (declining to reach the merits of the petitioner's arguments when there was adequate procedural grounds to decide the case); *Heckman v. Jividen*, 249 W. Va. 734, 745, 901 S.E.2d 297, 308 (Ct. App. 2024) (declining to address the merits of the petitioners' claims when the respondents were entitled to qualified immunity). I am frequently reminded of this policy and practice by my colleagues.

Nevertheless, in this case it is totally unnecessary for this Court to decide whether a 30–40 minute commute is sufficient to rebut the 50-50 custodial allocation presumed by West Virginia Code § 48-9-102a (2022) as "impracticable" under West Virginia Code § 48-9-209(f)(5) (2024). This is because in this case, Jacob H. failed to preserve the issues he raises before this Court on appeal. "As a general rule, nonjurisdictional issues not objected to at trial are deemed waived and may not be raised for the first time on appeal." *Johnson v. State Dep't of Motor Vehicles*, 173 W. Va. 565, 571, 318 S.E.2d 616, 622 (1984). *See also In re M.F.-1*, 250 W. Va. 312, 902 S.E.2d 861, 873 (2024); Syl Pt. 7, *Wheeling Dollar Sav. & Tr. Co. v. Leedy*, 158 W. Va. 926, 216 S.E.2d 560 (1975); Syl. Pt. 1, *State Rd. Comm'n v. Ferguson*, 148 W. Va. 742, 137 S.E.2d 206 (1964). The rationale behind this rule disregarding issues on appeal that were not raised below is rooted in fairness to other parties, and the need to have the issue and its facts refined, developed, and adjudicated by the trial court to enhance the appellate court's disposition of the issue. *See Whitlow v. Bd. of Educ. of Kanawha Cnty.*, 190 W.Va. 223, 226, 438 S.E.2d 15, 18 (1993).

Applying this rule to Jacob H.'s assignments of error, they should have been dismissed as waived, not adjudicated on the merits. None of the arguments raised by Jacob H. are jurisdictional in nature, so they must have been raised and ruled on by the family court below. However, a review of the February 6, 2024, hearing video reveals that Jacob H. did not make a single formal objection, or even argue against any of the terms of the order which he now appeals. Indeed, Jacob H. verbally and affirmatively agreed to the school week schedule which gave him Wednesday evenings and Thursday overnights, and to the 50-50 summer schedule. By failing to object to any of these matters, Jacob H. waived appellate arguments based upon them. Therefore, this Court should have dismissed Jacob H.'s arguments concerning the rebuttal of 50-50 custodial allocation as waived.

5

Instead of neatly disposing of the issues raised in this case, the majority wades into the fray and weighs in on the debate of what sort of distance and time is sufficient to rebut the 50-50 presumption of custodial allocation. In doing so, it needlessly decides that a school commute of 30–40 minutes is enough to rebut the 50-50 presumption. This decision has worrying implications, as West Virginia is a state where a slim majority of its population live in rural areas where travel distances to schools are generally longer. *See West Virginia Population 2024*, World Population Review, https://worldpopulationreview.com/states/west-virginia (last visited Nov. 12, 2024). Travel distances to schools are further lengthened by the increased school consolidation occurring in West Virginia. *See A growing trend to shrink: West Virginia public school systems turn to consolidation to combat declining enrollment, aging buildings, lack of certified teachers*, WV News (Oct. 9, 2024), https://www.wvnews.com/news/wvnews/a-growing-trend-to-shrink-west-virginia-public-school-systems-turn-to-consolidation-to-combat/article_d4f9798c-863b-11ef-9ac7-836a1eccf5a8.html. These factors make a school commute of 30–40 minutes not unusual in this state. Indeed, rather than a harm to the child, one could logically conclude that time spent in vehicle with a family member commuting to school would be meaningful time for interaction with the child. The family court's conclusion that such a commute would be harmful to the child is especially odd in light of West Virginia Code § 18-2E-5d (2008), which allows bus routes of up to 45 minutes to be created for elementary school students. It would be a strange result indeed if we are to believe that the legislature intentionally created a system for commuting children to school that is harmful to their educational outcomes.

Affirming the family court's conclusion that the 50-50 presumption had been rebutted here also creates potential problems in other cases, as current parenting arrangements or relocations involving substantial commutes to school may be subject to review based on this newly created standard for rebutting the 50-50 presumption as "impracticable" under West Virginia Code § 48-9-209(f)(5) (2024). The majority attempts to sidestep this issue by claiming that their decision is rooted in deference to the family court rather than an actual decision on the merits. However, regardless of whether the majority found the family court's conclusion to be optimal or merely acceptable due to deferential principles, by directly affirming that conclusion, the majority has accepted and adopted it. In accepting and adopting the family court's standard for what sort of distance and time is sufficient to rebut the 50-50 presumption, the majority at least impliedly creates a new standard that future litigators and courts could look to as precedent. Indeed, the majority's adoption of the family court's new standard in this case challenges the very nature of this decision, as memorandum decisions under Rule 21 of the West Virginia Rules of Appellate Procedure are not supposed to address new points or questions of law. *See In re T.O.*, 238 W. Va. 455, 463, 796 S.E.2d 564, 572 (2017); *State v. McKinley*, 234 W. Va. 143, 152, 764 S.E.2d 303, 312 (2014).

Furthermore, regardless of the survival of Jacob H.'s arguments, a family court's order must be sufficient to indicate the factual and legal basis for the family court's

6

conclusion. *Collisi v. Collisi*, 231 W. Va. 359, 363–64, 745 S.E.2d 250, 254–55 (2013). Such findings and analysis are required by statute, and are necessary to conduct a meaningful appellate review. *Emanuel R. v. Danielle R.*, No. 23-ICA-335, 2024 WL 1590886, at *2 (W. Va. Ct. App. Feb. 8, 2024) (memorandum decision). "The court's order determining allocation of custodial responsibility shall be in writing, and include specific findings of fact and conclusions of law supporting the determination." W. Va. Code § 48-9-206(d) (2022).

Here, when the family court established a non-50-50 custodial allocation for the school year and a 50-50 allocation for the summer, it merely indicated that this determination was made "[i]n consideration of West Virginia Code §48-9-209 and all of the objectives contained in West Virginia Code §48-9-102 and §48-9-102a, including the primary objective to serve the best interests of the child." Although the family court claims that it considered the required statutes, it did so in a general and conclusory way. In addition, the evidentiary basis for the family court's conclusions regarding dangers to the child's scholastic performance during the school year is unclear. The record reflects no basis for the family court's findings or conclusions regarding the commute's harm to the child, either from research or expert opinions on the issue generally, or related to the particular child in this case. Without anything more than the conclusory statements contained in the order, it is simply the family court's personal unsupported opinion. The personal opinion of an individual family court judge, without an explanation or basis for that opinion, is insufficient, stymieing appellate review were these issues properly preserved for appeal. However, in this case the parties arguably agreed, and certainly accepted, the parenting plan discussed and outlined by the family court judge at the hearing. Such a joint agreement to the determination of custodial responsibility displaces the normal statutory fact-finding requirements. W. Va. Code § 48-9-206(d) (2022). Although far from perfect, in a case where no objections were made below and the parties seemingly agreed to the parenting plan, the family court's order here is adequate, if skeletal.

All of the aforementioned issues with the family court's order support a conclusion based on waiver of the issue without directly affirming, and lending this Court's support and authority to, the family court's decision and its related "impracticability" school commute standard. Therefore, I respectfully concur with the majority's decision.

7